STATE OF MAINE

Sagadahoc, ss.

SUPERIOR COURT
AMH - SAG- 12/14/2010

WENDY JOHANSEN and
ROBERT JOHANSEN,

Plaintiffs

v.                                                    Docket No. SAGSC-AP-10-002

CITY OF BATH

Defendant

## STAY ORDER

This appeal pursuant to M.R. Civ. P. 80B returned to court December 14, 2010 for

oral argument after remand. Jenny Burch and Patrick Scully appeared as counsel for the

Plaintiffs Wendy and Robert Johansen and the Defendant City of Bath respectively. The

argument was electronically recorded.

As discussed at hearing, the court intends to remand this case a second time on the

same issues addressed in the first remand, and expects this time that the Bath Planning

Board, with the assistance of independent counsel not associated with the applicant, will

engage in a full and meaningful review of the areas within the scope of remand. Any and

all future meetings of the Board held in compliance with the remand will be held on at least

10 days' notice to the Plaintiffs and the public.

Plaintiffs are hereby authorized to record in the Sagadahoc County Registry of Deeds

a notice of the pendency of this appeal and a description of the access road—in the nature

of a *lis pendens* notice.

1

A stay having previously been requested and denied, the court on its own motion elects to reconsider that decision, *see* M.R. Civ. P. 54(b)(1) (any non-final order is subject to revision at any time).

Pursuant to M.R. Civ. P. 80B(b), the court deems it proper to stay any further action by the City of Bath during the remand and thereafter until further order of the court, regarding the access road which is the subject of this appeal, other than the Bath Planning Board's actions within the scope of the remand. The purpose of the stay is to prevent the City of Bath from taking any action whatever to advance the status of the access road during the stay, other than to the extent complying with the remand might be deemed to do so.

It is therefore hereby ORDERED that any and all actions by the City of Bath, and its officers, employees, board members, agents and contractors regarding the access road for Phase III West Bath Wing Farm Business Park, are hereby stayed and enjoined including without limitation:

(1) any improvement, construction or physical alteration of any kind whatever of the access road

(2) any act of legal significance in the nature of issuing permits, approvals, certifications, inspections or acceptances or anything else of that nature.

The court was advised that no work is currently being performed on the access road, at least as located in the City of Bath. On that basis, the court is not directing that the City of Bath issue a stop work order to halt any ongoing improvements or construction, but will consider amending this stay to include that requirement if Plaintiffs so request.

In aid of the stay, the City of Bath, and its officers, employees, board members, agents and contractors are hereby enjoined and prohibited from taking any actions in violation of this stay. The City shall make the employees with planning, permitting and

2

code enforcement responsibilities specifically aware of this stay and injunction, and to make them aware that construction work on the access road, if commenced, should be stopped.

This stay does not apply to any activity located outside the boundaries of the City of Bath. No security for this stay is required of the Plaintiffs.

This stay order also does not prohibit the members of the Bath Planning Board, City planning staff and legal counsel from performing any and all activity in compliance with the court's remand of this case, including act to grant or deny, with or without modification or amendment, approval of the application again before the Planning Board.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated 14 December 2010

Justice, Superior Court    Andrew M. Horton, presiding

3

STATE OF MAINE                                    SUPERIOR COURT
                                                  AMH—SAG - 1/4/2011
Sagadahoc, ss.


WENDY JOHANSEN and
ROBERT JOHANSEN,

                              Plaintiffs

              v.                                  Docket No. SAGSC-AP-10-002

CITY OF BATH

                              Defendant.


                            **ORDER OF REMAND**

       This appeal pursuant to M.R. Civ. P. 80B came before the court July 22, 2010 for

argument on the Plaintiffs' motion for stay. Counsel for the parties presented argument.

       During the argument, I indicated that a remand on certain issues was likely.

Without waiving their positions, the parties agreed to a remand on the understanding that

the court retained jurisdiction, meaning that after the Bath Planning Board acted on remand,

the case can return to this court and proceed at the request of any party without a further

appeal by the Plaintiffs.[1]

---

[1]    However, if the applicant Town of West Bath disagrees with the Planning Board's
determinations on remand, it would have to file an appeal in order to raise its concerns with
the court.

       The court was advised at oral argument that the same law firm is representing the
City of Bath, the Defendant in this case, and the applicant, Town of West Bath, which has
not been made a party. That may be appropriate on this appeal, when the applicant and
Board have the same objective—to have the Board approval upheld. However, the court
trusts that this will not be the case on remand. The Board's duty is to make the additional
findings and decisions called for in this order based on the evidence and the law, whether or
not they favor the applicant. For the same law firm that represents the applicant to advise
the Board on how to respond to this order of remand presents obvious problems and would
complicate matters considerably.

                                        1

*Background*

Plaintiffs Wendy and Robert Johansen have appealed from a decision of the City of Bath Planning Board approving a nine-lot business park subdivision proposed by the Town of West Bath. The project is part of a larger development called the West Bath Wing Farm Business Park, two prior phases of which have already been approved.

What makes this application for what is called Phase III of the project somewhat unusual is that the subdivision lots themselves lie in the Town of West Bath. West Bath has engaged in a separate permitting process for the lots and roads within West Bath, which is not an issue on this appeal.

The only part of the proposed subdivision that lies within the City of Bath is a portion of the access road to the subdivision. The access road would be built along what is now an unpaved way dating to colonial times, the King's Highway. The City of Bath access road connects to an existing public road called Wing Farm Parkway that evidently was approved during one of the earlier phases of the business park project.

The City of Bath Phase III permitting process began in September 2009 with a pre-application meeting at which representatives of the applicant, the Town of West Bath, appeared before the Bath Planning Board to introduce the project and answer preliminary questions. In October 2009, West Bath submitted its application to the Bath planning and development director. Between November 2009 and April 2010, the Bath Planning Board held additional meetings regarding the project, during which it received documentary information and heard comments from the applicant and a variety of others, including the Plaintiff Wendy Johansen.

Although not detailed in the record, the Phase III subdivision proposal also underwent review in the Town of West Bath under a separate process. When a subdivision

is located in two different municipalities, as here, the subdivision statute requires the two reviewing authorities to meet jointly unless they agree to waive joint meetings. *See* 30-A M.R.S. § 4403(1-A). In this case, the two municipalities waived joint meetings and proceeded separately in their review.

The Plaintiffs own property that does not abut the subdivision but is located within 100 feet of Lots 3 and 4 of Phase III. Much of the traffic that will be generated from the nine lots in Phase III of the business park project will pass by the Plaintiffs' property. During the Planning Board meetings, the Plaintiffs presented information indicating that their ability to go conveniently to and from their property will be affected by traffic from the project unless adequate measures and alternative means of access were provided.

At its April meeting, the Planning Board gave final approval to the Phase III application, as amended. The City of Bath subdivision ordinance permits appeal to the Superior Court directly from final decisions of the Planning Board regarding subdivisions. *See* 30-A M.R.S. § 4353(1) (permitting direct appeal if provided by ordinance). The Plaintiffs filed a timely appeal. The parties have agreed upon the record on which the appeal will be decided, and have briefed the issues.

*Standard of Review*

In an appeal brought pursuant to M.R. Civ. P. 80B, the Superior Court reviews the administrative decision for errors of law, abuse of discretion, or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. When "reviewing an administrative . . . decision, the issue before the court is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (quoting *CWCO, Inc. v.*

3

*Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175.

The court may not substitute its own judgment for that of the administrative tribunal. *See id.; accord, Brooks v. Cumberland Farms, Inc.* 1997 ME 203, ¶ 12, 703 A.2d 844, 848. In other words, an administrative decision is not wrong because it is inconsistent with parts of the record or because the court might have come to a different conclusion. *See Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1996). Further, "[i]nquiry into the thought process of a decision maker is improper," as analysis must be based on the "expressed findings and conclusions of the lower tribunal." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 14 n.8, 757 A.2d 773, 777-78.

However, if a board "fails to make sufficient and clear findings of fact [as] are necessary for judicial review," the court must remand the matter back to the board for those findings. *Comeau v. Town of Kittery*, 2007 ME 76, ¶ 9, 926 A.2d 189, 192 (quoting *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 30, 837 A.2d 148, 157).

The burden of persuasion in an action challenging an administrative decision rests on the party seeking to overturn the decision. *See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257, 260.

*Discussion of the Issues*

Plaintiffs' brief focuses on nine issues, discussed in depth below. Before turning to the issues raised by the Plaintiffs, the court needs to address an issue of standing raised by the Defendant City of Bath.

Standing

The Defendant City of Bath asserts that the Plaintiffs lack standing to appeal. The ordinance permits any "aggrieved party" to appeal from decisions of the Planning Board, but does not define the term. However, the Law Court has held that in an appeal from a subdivision approval, a party's appearance before the planning board, together with allegations of particularized injury, are sufficient to confer standing. *See Lakes Assoc. v. Town of Naples*, 486 A.2d 91, 93-94 (Me. 1984) (citing *Harrington v. Inhabitants of the Town of Kennebunk*, 459 A.2d 557, 559-60 (Me. 1983)).

Plaintiffs participated in the Planning Board's permitting process, and they claim to own property that will be adversely affected by traffic from the Phase III lot. The Plaintiffs have lived near the project for decades. Their primary concerns are with traffic but they also cite potential impact on wetlands that they use recreationally. The fact that the Bath Planning Board decided that the project would indeed have traffic impacts in the vicinity of the Plaintiffs' property that needed to be addressed through permit conditions, implies that the Board decided that there will be adverse traffic impact absent those conditions. Thus, although not direct abutters, the Plaintiffs have shown both particularized injury and significant participation in the proceedings before the Bath Planning Board sufficient to confer standing.

Lack of Findings on Requirements Deemed Not Applicable

The first issue raised in the Plaintiffs' brief focuses on the Planning Board's decision not to apply certain requirements of the state subdivision statute and the Bath ordinance to the Phase III project, because the requirements were "not applicable as the lots are in West Bath." The requirements that the Plaintiffs say were applicable and should have been considered were: undue water and air pollution; undue scenic; aesthetic wildlife and other impacts; conformity with the comprehensive plan; undue adverse impact on groundwater

and stormwater management. *See* 30-A M.R.S. § 4044(1), (8), (12), (16); City of Bath Subdivision Ordinance § 13.13. The second issue raised is that the Planning Board made the decision that those same requirements did not apply without making any findings of fact.

The City responds that the Board plainly applied those elements of the statute and ordinance that were relevant to the small portion of the subdivision in the City of Bath, and properly decided that other requirements did not apply. The City says the Board's reasoning is so obvious that the Board did not need to make formal findings.

The court agrees with the Plaintiffs' position.

The Board decision is incorrect in saying that the requirements in question "are not applicable as the lots are in West Bath." All of the performance standard requirements of the state statute and City ordinance are applicable to the portion of the access road in the City of Bath, just as they are applicable to the lots themselves. *See Moulton,* ¶ 9, 710 A.2d at 255 (access road "is an integral part of the subdivision").

The Board may have really meant that there is no evidence that the part of the access road within Bath has any impacts or effects of the kind described in the performance standards that the Board decided do not apply, but that is different than saying that the standards themselves "are not applicable."

Because all of the standards in the statutes and ordinance apply to the access road, the Plaintiffs are also correct that the Board failed to make necessary findings regarding the standards that the Board said are not applicable. On remand, the Board will need to make actual findings regarding whether the portion of the project in the City of Bath complies with the requirement in question. It may be that the finding is that the portion of the project in Bath will not have any of the impacts that the particular requirement is meant to regulate, but there still needs to be a finding of some kind.

6

<u>Review Limited to the Portion of the Project in Bath</u>

Plaintiffs also argue that the Board had to conduct a full review of the entire parcel comprising the subdivision, not only the portion in Bath. They rely on the Law Court decision in *Town of North Yarmouth v. Moulton*, in which the court held that the Town of North Yarmouth had jurisdiction to review a subdivision even though only a portion of the access road was within the town, and all of the subdivision lots lay entirely outside town boundaries. 1998 ME 96, ¶¶ 8-9, 710 A.2d 252, 254-55.

Noting that the proposed access for the subdivision connected to a public road in North Yarmouth, the Court said, "Given the increased traffic flow [associated with the access road], North Yarmouth clearly has a legitimate interest in reviewing the Moultons' proposed subdivision." Similarly, in the present case, the fact that the Phase III subdivision's access road lies within the City of Bath confers jurisdiction on the Bath Planning Board to conduct the review that it did, in which the Board focused mainly on traffic and wetlands.

However, the Law Court in *Moulton* specifically left open the issue that the Plaintiffs here have raised: "This case does not require us to ascertain the scope of North Yarmouth's review or whether the Town may review those portions of the subdivision relating solely to Yarmouth." *Id.* ¶ 6 n.2, 710 A.2d at 254 n.2.

However, the court agrees with the City that the Bath Planning Board's review of the subdivision should be limited to the portion of the subdivision within the City of Bath. The Bath Planning Board was not required to review impacts associated with the portion of the subdivision in West Bath. The primary reason for that conclusion has to do with the statutory review criteria for subdivisions. The section 4404 review criteria, with few exceptions, require the reviewing municipality to consider the impacts of a proposed

7

subdivision wherever they occur, not only those impacts occurring within the municipality.

Thus, with respect to air and water pollution for instance, the statute does not limit review to impacts within the municipality. It was therefore the duty of the West Bath Planning Board to review the portion of the subdivision in West Bath, and the impacts associated with that portion, even if the impacts occurred outside West Bath. The Bath Planning Board was correct in not applying the subdivision review criteria to those parts of the subdivision located in West Bath.

A contrary interpretation of the statute raises obvious problems. If each municipality's planning board had jurisdiction to conduct a full review of all parts of the subdivision, including the parts of the subdivision located in the other municipality, how would any conflicts between the requirements of each municipal ordinance be resolved? How would differences in the outcome of planning board review be resolved?

It is noteworthy that the statutory provision regarding subdivisions located in two municipalities calls for joint meetings unless waived (as occurred here), *see* 30-A M.R.S. § 4403(1-A), but does not call for joint decisions on the same parts of the subdivision, nor does it expand the jurisdiction of either reviewing authority.

The Plaintiffs' reliance on the Law Court opinion in *Grant's Farm Associates, Inc. v. Town of Kittery*, 554 A.2d 799, 803 (Me. 1989), is misplaced. In *Grant's Farm*, the Law Court noted that review by the State Board of Environmental Protection overlaps with review by the town authority and does not displace it. That principle does not apply to review by two coordinate municipal authorities.

Impact on Wetlands

Plaintiffs' third issue relates to the Board's finding with regard to the City subdivision ordinance standard titled "Impact on Water Quality and Shoreline." City of Bath

8

Subdivision Ordinance § 13.13(K). In its decision, the Board found: "This subdivision is not within 250 feet of a river as defined." Plaintiffs correctly point out that section 13.13(K) applies to any subdivision located within 250 feet of a wetland as well as a river. This project is clearly within 250 feet of a wetland, so the Board's decision on its face fails to address one of the Subdivision Ordinance's standards. On remand, the Board will need to decide whether the application complies with the requirements of section 13.13(K) with respect to the wetland, and make findings in any case.

The Connectivity Issue

Plaintiffs' fourth argument relates to the connectivity provisions of the ordinance. *See* City of Bath Subdivision Ordinance § 13.14(B)(2)(d). In substance, those provisions are intended "to require street connectivity whenever possible," and to require any subdivision applicant to demonstrate how its design achieves connectivity, "if feasible."

If connectivity is not feasible, the Ordinance appears to mandate that the Board incorporate at least one of several enumerated "measures" into the design of the subdivision, which in this case would mean the access road. *See* City of Bath Subdivision Ordinance § 13.14(B)(2)(d)(ii). In this case, the Board does not appear to have considered connectivity in its written decision or decided whether it was feasible, contrary to the requirement of the Ordinance. This was despite the fact that the Plaintiffs expressly raised the issue. In failing to address connectivity in any way in its decision, the Board erred.

The remand on this issue requires the Board to follow the provisions of section 13.14(2)(d), including at least, but not necessarily limited to: deciding what further conditions should be required if connectivity is feasible; deciding what alternative "measures" to impose if it is not feasible, and making findings supporting all of its determinations. In deciding whether connectivity is feasible, the Board is not limited to

9

considering conditions within the City of Bath. For example, if the Board decides that connectivity is feasible by means of another access road, it may condition approval of its portion of the project on completion and use of a second access road, even if that second road is located in West Bath. If the Board decides that connectivity is not feasible, it should decide which of the alternative measures to apply to the access road. In theory, the Board might waive the connectivity requirement altogether, but such a broad waiver could be vulnerable to a challenge for nullifying the purposes of the connectivity provisions of the Ordinance.

### Waivers Without Findings

Plaintiffs' fifth and sixth arguments are that the Board waived certain requirements of the subdivision ordinance—relating to the width, grade and turning radius of the access road, and to an infrastructure construction plan—pursuant to section 13.18 of the Ordinance, but did not make the "written findings of fact and conclusions" that are specifically required by the Ordinance. Again, the Plaintiffs are correct.

On remand, the Board must make written findings and conclusions regarding all waivers under section 13.18, should it decide to stand by the waivers. Plaintiffs claim that the waiver of the infrastructure construction plan would nullify the purposes of the Ordinance, and the Board should consider that question also on remand.

### Completeness of Application

Plaintiffs' seventh argument is that the Board erred in deeming the application complete when it failed adequately to identify streams. On this issue, the Plaintiffs have failed to demonstrate error. Specifically, the Plaintiffs have failed to show that there was no substantial evidence on which the Board could have deemed the application sufficient in terms of identifying streams. In fact, the application site plan shows a watercourse named

Whiskeag Creek within the wetland adjacent to the access road. *See, e.g.* Record at 2.65 (overall site plan).

### Traffic Conditions

Plaintiffs' final two arguments pertain to the Board's decision to condition its approval of the Phase III subdivision proposal upon certain traffic improvements. Section 13.13(E) of the Bath Subdivision Ordinance requires the Board to determine whether the proposed subdivision will cause unreasonable traffic conditions. In particular, the additional traffic associated with the subdivision cannot reduce the Level of Service of adjacent streets to Level E or below.

The Board decision sets forth the conclusion that this requirement is met, "with certain Conditions." Record at 1.3. The Plaintiffs fault the Board for not spelling out what those conditions are. Although the Decision later indicates that the conditions are to be recorded on the approved final plan, the conditions themselves are never spelled out in the Decision. By looking at the plan, one perhaps might assume that the conditions listed there are the same as the ones referred in the Decision, but the conditions should be spelled out in the Decision itself to remove any uncertainty. On remand, if it decides to approve the project, the Board should spell out the traffic-related conditions that are required in its amended decision, and also make findings as to whether the required conditions will handle the traffic impacts of the project as required by the Ordinance, and why.

Plaintiffs also argue that the Board's finding that, with "certain Conditions" the project complied with the traffic-related requirements of the Subdivision Ordinance, is not supported by substantial evidence. In particular, they say the conditions the Board presumably imposed—meaning the ones listed in the approved plan but not in the

11

Decision—are not sufficient to reduce the traffic impacts of the project to the level required by the Subdivision Ordinance.

The court has to defer consideration of this issue until after the case returns from remand. The very reason for the remand regarding the traffic-related conditions is that the current Decision is insufficiently clear in that respect to be subjected to judicial review. It is also quite possible the Board will require different or additional traffic-related conditions in its amended decision as a result of considering connectivity. Thus, before the court can determine whether the Board's response to the traffic impacts of the project is supported by substantial evidence or not, the court needs to see what that response is, as reflected in the Board's amended decision.

### Effect of Remand on Permit

The Plaintiffs seek to have the court vacate the Board's approval based on deficiencies in the Board's decision. Because the court agrees with the Plaintiffs on many or most of their points of appeal, some discussion of whether to vacate the permit is in order.

In its decisions, the Law Court has distinguished between situations in which a board's grant of a permit is overturned based on lack of evidence to support it, and situations in which the court remands for further findings. In *Glasser v. Town of Northport*, the Law Court rejected the appellant's contention that the inadequacy of findings by the board meant that the court had to vacate the permit:

> The statute required the Planning Board, before approving the subdivision application, to make findings that the subdivision would meet the statutory defined criteria and would comply with the Town's subdivision ordinance. Glasser contends that the Board failed to make adequate findings on certain of those criteria and that therefore its approval of the subdivision application is a nullity. There is no support in our decisions for any such draconian consequence of inadequate findings. *At most, were we to find the record contained inadequate findings, we would remand the case to the Board and direct it to make further findings.*

589 A.2d 1280, 1282 (Me. 1991) (emphasis added).

12

The problems with the Planning Board all center on inadequate findings—meaning that the Board in its written Decision failed to make findings on matters that the state statute and/or the Bath Subdivision Ordinance require be addressed. If the court concluded that there was insufficient evidence to support the Board's decision to approve the Phase III subdivision, the court would likely be constrained to vacate the approval. The court also might well have granted the Plaintiff's request for stay of construction. However, because the deficiencies in the Board's decision relate to its findings or lack thereof in the areas mentioned above, the appropriate response is to remand for further findings without nullifying the approval.

For these reasons, this Order of Remand does not vacate the approval granted to the project. The court assumes the Board will comply with this Order and conduct a *bona fide* and meaningful review of the areas identified in this Order. If after that review the Board decides to stand by its approval, with or without additional or different conditions, the Plaintiffs may renew their request for the approval to be vacated. The court's response will likely center on whether the issues identified in this Order are resolved in compliance with the statute and the Ordinance on the remand. As indicated at oral argument, the applicant is at risk if it proceeds with construction before this case is resolved.

Activity on Remand

The purpose of the remand is for the Bath Planning Board to re-examine the entire existing record, consider the issues that it did not address, and make the findings that it omitted, as set forth above. This is not an opportunity to re-open the record for new evidence. Nor should the Board revisit areas outside those identified in this Order as requiring further action. However, the Board can permit the applicant, the Plaintiffs, and others to comment on what actions the Board should take to respond to the remand.

When the Board has made decisions on the issues identified in this order, it should issue an amended decision that includes all of the Board's findings. Depending on what decisions the Board makes on the various issues listed above, the amended decision may uphold the previous decision to grant approval or it may rescind that decision and deny approval. In either case, the amended decision shall include the Board's findings in the areas identified above. If the Board decides to uphold the previous decision, the amended decision should include any additional conditions the Board decides to impose.

After the Board has issued its amended decision in writing and notified the parties to this case, the parties shall notify the court. The court will likely then schedule a conference of counsel. In the meantime, counsel are requested to confer on the contents of a supplemental record of the proceedings on remand.

*Conclusion*

For the reasons stated, it is hereby ORDERED:

1. The appeal is sustained.

2. This matter is remanded to the City of Bath Planning Board for further proceedings consistent with this Order.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order of Remand by reference in the docket.

Dated 30 July 2010

A. M. Horton
Justice, Superior Court

STATE OF MAINE                                  SUPERIOR COURT

Sagadahoc, ss.                                  AMH— 7AG - 1/4/2011

WENDY JOHANSEN and
ROBERT JOHANSEN,
                                    Plaintiffs

                v.                          Docket No. SAGSC-AP-10-002

CITY OF BATH
                            Defendant

## SECOND ORDER OF REMAND

This order sets forth the court's reasons for remanding this case a second time. The

facts of this case were described in depth in the court's July 30, 2010 Order, so they are only

briefly recapitulated here, along with the subsequent proceedings on remand.

*Background*

Plaintiffs Wendy and Robert Johansen have appealed from a decision of the City of

Bath Planning Board approving a nine-lot business park subdivision proposed by the Town

of West Bath. The subdivision lots themselves lie in the Town of West Bath; but the access

road to the subdivision lies within the City of Bath. The Plaintiffs own property that does

not abut the subdivision but is nearby. Much of the traffic projected to be generated by the

project would pass by the Plaintiffs' property.

During the Planning Board meetings, the Plaintiffs presented information indicating

that their ability to go conveniently to and from their property will be affected by traffic

from the project unless adequate measures and alternative means of access were provided.

At its April 2010 meeting, after numerous meetings on the project, the Bath Planning Board gave final approval to the application as amended. The Plaintiffs filed a timely appeal of the decision to the Superior Court.[1]

On July 22, 2010, the court heard argument on the appeal. On July 30, 2010, this court issued an Order of Remand. In the Order the court noted:

> The court was advised at oral argument that the same law firm is representing the City of Bath, the Defendant in this case, and the applicant, Town of West Bath, which has not been made a party. That may be appropriate on this appeal, when the applicant and Board have the same objective—to have the Board approval upheld. However, the court trusts that this will not be the case on remand. The Board's duty is to make the additional findings and decisions called for in this order based on the evidence and the law, whether or not they favor the applicant. For the same law firm that represents the applicant to advise the Board on how to respond to this order of remand presents obvious problems and would complicate matters considerably.

Nevertheless, that was what happened during the remand. The supplemental record filed after remand revealed that the Bath Planning Board's attorney also represents the applicant, the Town of West Bath, regarding the Town's Wing Farm project. See, e.g., Pamela Hile Dep. at 5 ("Do you consider the Town of West Bath currently a client of the firm, Therriault & Therriault?". . . "Yes."); id. Ex. B; Letter to Economic Development Administration from Roger Therriault) ("As you know, our office represents the City of Bath as its City Solicitors. We also serve as Town Attorney for the Town of West Bath.").

At the September 7, 2010 meeting at which the Bath Planning Board addressed the application in response to the remand, the same attorney who represents the applicant served as legal advisor to the Planning Board. He presented the Board with a draft amended decision, showing "redline" changes made from the original decision. The transcript of the proceeding indicates that the Johansens and their attorney appeared at the meeting and

[1] The City of Bath subdivision ordinance permits appeal to the Superior Court directly from final decisions of the Planning Board regarding subdivisions. *See* 30-A M.R.S. § 4353(1) (permitting direct appeal if provided by ordinance).

2

objected to the Planning Board's use of the Board's attorney's draft amended decision. Supplemental Record, Ex. 3 at 6-7. The transcript also shows that after public comment was closed, the Board essentially went through the draft decision its attorney had prepared, and approved it with no significant changes. Supplemental Record, Ex. 3 at 9 *et seq.* Finally, the transcript indicates that the Board's attorney went beyond the role of legal advisor to the Board and in at least one instance told the Board how to decide one of the factual issues before it.

By the time the appeal returned to the Superior Court, the City of Bath was represented by different counsel for purposes of briefing and oral argument. The Johansens now argue that because of the Board's attorney's dual representation of both the applicant and the board reviewing the application, the entire remand process was so flawed as to require that the case be remanded again.

## *Discussion*

In an appeal brought pursuant to M.R. Civ. P. 80B, the Superior Court reviews the administrative decision for errors of law, abuse of discretion, or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. Generally, when "reviewing an administrative . . . decision, the issue before the court is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261).

However, a court cannot permit the violation of a party's constitutional rights, such as where municipal action is "taken without according procedural and substantive due

process." *Mutton Hill Estates, Inc. v. Oakland*, 468 A.2d 989, 992 (Me. 1983) (citing *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 170 (Me. 1974)).

In *Mutton Hill*, the Law Court found that the applicant's due process rights were violated when the Board permitted the opponents of the application to help formulate the findings of facts, without notice or an opportunity for the applicant to be heard. 468 A.2d at 992. The court, in upholding the Superior Court's decision to vacate the Board, held: "It cannot be determined from the record of the Planning Board if new evidence was taken at those meetings or if the opponents unduly influenced members of the Board in making findings of fact unfavorable to the applicant's proposal." *Id.*

Decisions from other jurisdictions make it clear that a conflict of interest on the part of an attorney advising a board can render adjudicative decisions of the board vulnerable to challenge on due process grounds. *See, e.g. Quintero v. City of Santa Ana*, 114 Cal. App. 4th 810, 7 Cal. Rptr. 3d 896, 2003 Cal. App. LEXIS 1912 (2003), *rev. den.*, 2004 Ca. LEXIS 2785 (2004); *Davenport Pastures, LP v. Morris County Board of County Comm'rs*, 291 Kan. 132, 238 P.3d 731, 2010 Kan. LEXIS 622 (2010); *Newtown Township Board of Supervisors v. Greater Media Radio Co.*, 138 Pa. Commw. 157, 587 A.2d 841, 1991 Pa. Commw. LEXIS 102 (1991).

In the zoning case of *Crispin v. Town of Scarborough*, the Law Court addressed a project opponent's argument that the planning board's attorney had a conflict of interest affecting the validity of the decision. 1999 ME 112, n.5, 736 A.2d 241, 244. Although the court ultimately found no conflict affecting the outcome, the court's analysis confirms that the validity of a planning board decision can be affected by a conflict of interest on the part of the board's attorney.[2]

---

[2] In its discussion, the court in *Crispin* noted as follows:

Several times during the course of the proceedings, the Town's attorney fully disclosed the

4

For two reasons, the court agrees that the case must be remanded, again.

First, the fact that the Planning Board's attorney also represented the applicant Town of West Bath on the same subject matter—West Bath's Wing Farm Subdivision—created an obvious conflict of interest. His duty to represent West Bath's interests regarding the subdivision project prevented him from advising the Planning Board in any manner contrary to West Bath's interests, whereas his duty to the Bath Planning Board was to give good independent advice, even that if that advice was contrary to West Bath's interests. That is a classic conflict of interest—exactly the conflict the court flagged in its remand order.

Second, the Board's attorney's actual role during remand was such as to raise a significant doubt as to whether the Bath Planning Board engaged in the meaningful review the court expected to occur. The fact that the Board's attorney presented the board with a draft amended decision favorable to the applicant before the Board had even begun its discussion was problematic in itself. It can only be inferred that the attorney assumed and intended from the outset that the Board would act in favor of the attorney's other client on

---

details of the alleged conflict and stated that he believed he could represent the Town consistently with his obligations under the Code of Professional Responsibility. In addition, he offered to withdraw from representation of the Town if any of the members of the Planning Board wished. The Planning Board fully and publicly considered the disclosure by its long-time attorney and affirmatively sought his continuing representation.

1999 ME 112, n.5, 736 A.2d 241, 244 (citing *Toussaint v. Town of Harpswell*, 1997 ME 189, ¶ 11, 698 A.2d 1063, 1066-67). The situation in *Crispin* is distinguishable in that different attorneys represented the town and the other party, and the other attorney's representation involved the real estate involved in the application before the town board, not the application itself. Moreover, the just-quoted reference in *Crispin* notwithstanding, this court cannot conceive of a situation in which a planning board in a contested proceeding could legitimately waive its own attorney's conflict of interest, at least when the conflict is of such significance as to affect the attorney's ability to render fully independent legal advice. The cases cited in this order stand for the proposition that, just as a public board with adjudicative responsibility cannot relinquish its own duty to act impartially, it cannot consent to be advised by an attorney whose ability to give completely impartial and independent advice is constrained or limited by other representation.

5

all issues. The attorney also took an active role during the board deliberations. Regarding

the issue of whether connectivity is feasible—the Board's attorney appears in the transcript

actually to be telling the Board how to decide that issue.[3]

In remanding this case, the court expected the Board to review the record and

deliberate on the questions that were not answered in its original Notice of Decision. In

other words, the court expected a genuine, straight-up revisitation of the remaining issues.

That is not what happened. The transcript of the Planning Board meeting on remand,

indicates that the Board instead adopted, more or less wholesale and without substantive

discussion, the decision drafted by its attorney, who also represented the applicant.

Supplemental Record, Ex. 3 at 2, 5-7, 9, 10-11, 13-19.

In its brief, the City points out that the Board's attorney never actually represented

West Bath in front of the Bath Planning Board. This makes no difference in the court's

view. Dual representation does not have to be simultaneous to present a conflict.

The court in the above-cited *Newtown Township* case addressed a similar situation:

> Having reviewed the transcript of the public hearings held before the Board, we
> share the trial court's concerns about the manner in which these public hearings were
> conducted, and concur in its characterizations of the proceedings. It creates an
> appearance of impropriety for the township's solicitor to serve as legal advisor to the
> Board in ruling on Appellee's conditional use application, and to also act in an
> adversarial capacity in opposition to the conditional use application. It is true that the
> solicitor was not literally representing any objector or party opposed to Appellee's

---

[3] In the same exchange, the Board's attorney appears to be speaking for one client—the Town of West Bath—in advising his other client—the Bath Planning Board—how to decide the connectivity issue:

> MR. THERRIAULT: Mr. Chairman, if I might, I wanted to emphasize the connectivity issue that in some significant discussion in your record about that. And we cannot provide, it's not possible to provide full conductivity with respect to accessing the lots in West Bath. For a number of reasons that you dealt with in your finding that there are alternative things that can be done to ameliorate the problem. And we have listed here several of them . . . .

(Supplemental Record, Ex. 3 at 14-15). At least the first "we" seems to refer to the applicant West Bath, given that it is the applicant's obligation to provide connectivity when it is feasible.

proposal; however, a review of the hearing transcripts leaves us with the distinct impression that the solicitor played the role of opposing counsel in this proceeding.

138 Pa. Commonw. 157, 162, 587 A.2d 841, 843 (emphasis added).

A review of the transcript in this case leaves the impression that the Board's attorney, in presenting the Board up front with a draft decision that assumed findings favoring the applicant on all issues, was likewise playing dual and incompatible roles.

Because the Board adopted its attorney's draft decision more or less verbatim, the court is unable to say that the Bath Planning Board's action on remand was not influenced by its attorney's conflict of interest. The court does not fault the Board for relying on its attorney, because a planning board should rely on its counsel on legal issues. That very fact makes it essential for a citizen board to have legal advice that is entirely independent and impartial, and is not subject to a conflict of interest.

To summarize, the combination of the conflict of interest, the Board's attorney's active role in drafting and presenting a decision favorable to the applicant before the Board had even deliberated, and the Bath Planning Board's adoption of the attorney's draft decision, resulted in at least the appearance of bias and partiality, if not actual prejudice. Based on these circumstances, the court concludes that a second remand is necessary. It is ORDERED, that this matter is again remanded to the Bath Planning Board.

*Action on Remand*

The court's July 30, 2010 Order where the court provided a detailed description of the issues before the Board. To avoid any further difficulties in this case, the court will specify what it expects the board to consider in the course of the remand:

*Lack of Findings on Requirements Deemed Not Applicable:* On remand, the Board will need to make actual findings regarding whether the portion of the project in the City of Bath complies with certain requirements of the state subdivision statute and the Bath ordinance;

7

such as undue water and air pollution; undue scenic, aesthetic, wildlife, and other impacts; conformity with the comprehensive plan; and undue adverse impact on groundwater and storm water management. *See* 30-A M.R.S. § 4044(1), (8), (12), (16); City of Bath Subdivision Ordinance § 13.13.

*Impact on Wetlands:* On remand, the Board will need to decide and make findings whether the application complies with the requirements of section 13.13(K) with respect to the wetland.

*The Connectivity Issue:* The remand requires the Board to follow the provisions of section 13.14(2)(d), including, but not necessarily limited to: deciding what further conditions should be required if connectivity is feasible; deciding what alternative "measures" to impose if it is not feasible, and making findings on all of its determinations.

In deciding whether connectivity is feasible, the Board is not limited to considering conditions within the City of Bath—it can require the applicant to provide connectivity in West Bath.[4] The record below suggests that the Bath Planning Board may have felt that the fact that the subdivision was designed with only one means of vehicular access meant that connectivity is not feasible. The Board is not limited by the design presented to it.

The court expects the board to review the existing record and determine if connectivity is feasible—meaning in this case, whether it is feasible for the subdivision to be configured with a second access road in West Bath. If the Planning Board decides that a second access road is feasible, even if that second access road is in West Bath, the board can

---

[4] Admittedly the Law Court has left somewhat open the question of the extent of one town board's ability to regulate subdivision activity in another town. *See Town of North Yarmouth v. Moulton*, 1998 ME 96, ¶¶ 8-9, 710 A.2d 252, 254-55. However, the Bath Planning Board's right/obligation to review that portion of an access road located within Bath must include the ability to put conditions on the use of that road, including, presumably, conditions that could require changes in that portion of the subdivision located in West Bath. In fact, the Board already done just that in requiring sprinklers, all of which would be located in the Town of West Bath.

condition its approval of the Bath access road on the implementation of that second means of access. Regardless of its determination, the board should make appropriate findings based on substantial evidence in the existing record.

*Waivers Without Findings:* On remand, the Board must make written findings and conclusions regarding all waivers under section 13.18, should it decide to stand by the waivers. Plaintiffs claim that the waiver of the infrastructure construction plan would nullify the purposes of the Ordinance, and the Board should consider that question also on remand.

*Traffic Conditions:* On remand, if it decides to approve the project, the Board should spell out the traffic-related conditions that are required in its amended decision, and also make findings as to whether the required conditions will handle the traffic impacts of the project as required by the Ordinance, and why.

When the Board has made decisions on the issues identified in this Order, it should issue a second amended decision that includes all of its findings and any additional conditions the Board decides to impose. After the Board has issued its amended decision in writing and notified the parties to this case, the parties shall notify the court. The court will likely then schedule a conference of counsel. In the meantime, counsel are requested to confer on the contents of a supplemental record of the proceedings on remand.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated 4 January 2011

_____
Justice, Superior Court
Honorable Andrew M Horton, presiding

9

STATE OF MAINE                                    SUPERIOR COURT
                                                  AMH-SAG-9/28/2011
Sagadahoc, ss.


WENDY JOHANSEN and
ROBERT JOHANSEN,
                        Plaintiffs


        v.                              Docket No. SAGSC-AP-10-002


CITY OF BATH
                        Defendant

                 **RULE 80B DECISION AND ORDER**

        This appeal, pursuant to M.R. Civ. P. 80B, comes before the court again after this

court's Second Order of Remand. The facts of this case were described in depth in the

court's July 30, 2010 Order of Remand and January 4, 2011 Second Order of Remand, so

they are only briefly recapitulated here, along with the subsequent proceedings.

        For the reasons that follow, the Third Amended Notice of Planning Board Decision

is affirmed.

                                  *Background*

        Plaintiffs Wendy and Robert Johansen have appealed from a decision of the City of

Bath Planning Board approving a nine-lot business park subdivision proposed by the Town

of West Bath. The subdivision lots themselves lie in the Town of West Bath but the access

road to the subdivision lies within the City of Bath.[1] The Plaintiffs own property that does

not abut the subdivision but is nearby.

        During the Planning Board meetings, the Plaintiffs presented information indicating

that their ability to go conveniently to and from their property will be affected by traffic

from the project unless adequate measures and alternative means of access were provided.

---

[1] The access road to the subdivision, referred to as the "Bath Access Road Segment," is an
approximately 300-foot segment over an old section of road called the King's Highway.

1

In April 2010, after numerous meetings on the project, the Bath Planning Board gave final approval to the application, as amended. The Plaintiffs filed a timely appeal of the decision to the Superior Court.[2]

On July 30, 2010, this court issued an Order of Remand ordering the Planning Board to reexamine the record, to make additional findings of fact and conclusions of law on several standards required by the state subdivision statute and the Bath subdivision ordinance, and to issue an amended decision. The Order of Remand also cautioned the Planning Board and the applicant Town of West Bath regarding the conflict of interest inherent in being represented by the same law firm in the same matter.

When the Planning Board reconsidered the application on remand, it failed to heed this caution and was advised by the same firm that represented the applicant. Furthermore, the actions of the Planning Board's counsel raised significant doubt as to whether the Planning Board engaged in the meaningful review the court expected to occur.

On January 4, 2011, this court issued a Second Order of Remand again instructing the Board to make written findings of fact and conclusions of law. The Planning Board convened to reconsider the subdivision application and, on May 3, 2011, issued a Third Amended Notice of Planning Board Decision granting approval of the subdivision.[3]

The Plaintiffs have appealed from the Third Amended Decision[4] and argument was heard on September 7, 2011. The original appeal raised several issues but the Plaintiffs limit this appeal to the issue of whether the factual findings on which the roadway design standard

---

[2] The City of Bath subdivision ordinance permits appeal to the Superior Court directly from final decisions of the Planning Board regarding subdivisions. *See* 30-A M.R.S. § 4353(1) (permitting direct appeal if provided by ordinance).

[3] A decision entitled "Second Amended Notice of Planning Board Decision" is included in the record but is marked as a draft.

[4] This court retained jurisdiction over an appeal by the Plaintiffs after remand. *See* Order of Remand, *Johansen v. City of Bath*, SAGSC-AP-10-002 (Me. Super. Ct., Sag. Cty., July 30, 2010).

2

waivers granted by the Planning Board rest are supported by substantial evidence and whether the grant of the waivers violates Bath's City Ordinances.

*Discussion*

In an appeal brought pursuant to M.R. Civ. P. 80B, the Superior Court reviews the administrative decision for errors of law, abuse of discretion, or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor,* 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. Generally, when "reviewing an administrative . . . decision, the issue before the court is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (quoting *CWCO, Inc. v. Superintendent of Ins.,* 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). Substantial evidence is defined as evidence that a reasonable mind would rely on to sufficiently support a conclusion. *Bodack v. Town of Ogunquit,* 2006 ME 137, ¶ 6, 909 A.2d 620, 622. It is proper for the court to take into account the source of the evidence when weighing its substantiality. *Grant Farm Assoc., Inc. v. Town of Kittery,* 554 A.2d 799, 801 n.1 (Me. 1989). Substantial evidence is not lacking simply because inconsistent conclusions may be drawn from it. *Toomey v. Town of Frye Island,* 2008 ME 44, ¶ 12, 943 A.2d 563, 566. Ultimately, the court must uphold the agency's decision unless it was unlawful, arbitrary, capricious, or unreasonable. *Juliano v. Town of Poland,* 725 A.2d 545, 547 (Me. 1999).

Standing

The Defendant City of Bath raises the question of whether the Plaintiffs have standing to bring this appeal. This court found in the July 30, 2010 Order of Remand that, based on the standard articulated in *Lakes Association v. Town of Naples,* 486 A.2d 91, 93-94 (Me. 1984), the Plaintiffs did have standing because of their participation in the Planning

3

Board's process and their allegation that their property would be adversely affected by traffic and potential damage to nearby wetlands. The Defendant now argues that because the Plaintiffs no longer assert claims related to traffic or wetlands impacts and because the road standard waivers do not cause a particularized injury to them, the Plaintiffs no longer have standing.

Because the court affirms the Planning Board decision, it is unnecessary for the court to address standing. *See Morse Bros. v. Webster*, 2001 ME 70, ¶ 32, 772 A.2d 842, 852; *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994). For the purposes of this decision the court assumes, without deciding, that the Plaintiffs have standing to undertake this appeal.

Substantial Evidence

The Plaintiffs argue that the Planning Board's Findings of Fact supporting its decision to grant three waivers of roadway design standards for the Bath Access Road Segment are not supported by substantial evidence in the record. Section 13.14(B)(2)(e) provides the design standards for each category of street in the City. A street that travels to industrial or commercial land uses is categorized as a "Major Street." R. 23.28 (Bath, Me. Land Use Code, § 13.14(B)(2)(e), n.1). A Major Street must have a minimum traveled-way width of 30 feet, a maximum grade of 5 percent, and a minimum centerline radius of 400 feet, without superelevation. R. 23.27-23.28 (Bath, Me. Land Use Code, § 13.14(B)(2)(e)).

The Third Amended Decision grants waivers for these requirements and allows the Bath Access Road Segment to have only a 24-foot traveled-way width, an 8 percent grade, and a centerline radius of 200 feet, without superelevation. S.R.2d 8.16. The Board cited Findings of Fact #36 through #41 as support for this decision. These findings provide two bases as support for granting the waivers: decreased impacts to the wetland resulting from

4

the reduced footprint of the road and continuity with the geometry of neighboring roads. S.R.2d 8.7-8.8 (Finding #40).

First, to support the reduction in traveled-way width, the Board relied on the fact that this portion of the road would match the traveled-way width of Wing Farm Parkway, an existing road intersecting with the Bath Access Road Segment. R. 11.6. The Board concluded that it would be inappropriate to require the Bath Access Road Segment to have a wider traveled-way width than the road with which it intersects. Furthermore, it is logical for the Board to have concluded that a narrower traveled-way width will cause less of an impact on the surrounding wetlands because less of the wetland will be filled. Although the applicant, not a neutral source, presented this information, the Planning Board could reasonably rely on it, given that the information was not materially contradicted by other evidence in the record.

Second, to support the increase in grade, the Board relied on the applicant's statement that increasing the grade will result in a smaller footprint and that an eight percent grade is not inappropriate for truck traffic in this situation. R. 11.11. The Board questioned whether this would be a safe grade for road travel and was presented with additional evidence that the grade at the intersection would not be eight percent but instead would be approximately two percent, allowing for a truck to safely pull out from the Bath Access Road Segment onto Wing Farm Parkway. R. 11.12. Again, the court finds that this is competent evidence, even though the applicant presented it, and that it sufficiently demonstrates that the Planning Board questioned and then accepted that this waiver benefitted the public health, safety, and welfare.

Third, to support the waiver of the centerline radius of the road, the Planning Board relied on the assumption that reducing the footprint of the road would reduce the impacts

5

on the wetland. S.R.2d 5.14-5.15. The court notes the Plaintiffs' argument that the Planning Board's deliberations are not evidence. Pls. Reply Br. 8. However, the court finds that the Planning Board could reasonably rely on the evidence presented regarding the increased slope and reduced traveled-way width, which reduce the footprint of the roadway and thereby reduce the impact on the wetlands, to infer that the reduced curve radius would also reduce the footprint of the roadway and, thus, the impact on the wetland.

The Board was also presented with evidence of safety features, such as the stop sign for traffic leaving the Bath Access Road Segment and the posted twenty-file mile per hour speed limit imposed on the road. R. 12.32, 12.33. The Board could reasonably have considered these features to outweigh any potential decrease in the safety of the roadway caused by the waivers.

Based on the evidence cited above, the Third Amended Notice of Planning Board Decision granting these waivers is supported by evidence on which a reasonable mind would rely. This evidence indicates that special circumstances exist, making the waivers appropriate. Although much of the evidence is testimony of the applicant, nothing else in the record suggests that the Board could not reasonably accept the evidence as meeting the applicant's burden. In accordance with the case law, the court has considered the source of the evidence and finds that it does not diminish its substantiality. Also, the Board's ability to infer that the waivers would result in a smaller footprint and, thus, a reduced impact on the wetland is sufficient evidence to support granting the waivers.

Not only are the findings of fact supported by substantial evidence but the Planning Board also made sufficient findings to support the grant of the waivers. In this court's Second Order of Remand it directed the Planning Board to make "written findings and conclusions regarding all waivers under section 13.18, should it decide to stand by the

6

waivers" and to consider whether waiver "would nullify the purposes of the Ordinance." Findings #40 and #41 conclude that special circumstances exist that make it inappropriate to impose an inconsistent and environmentally damaging standard on the road in question and that the public health, safety, and welfare are enhanced by the minimization of impacts on the wetlands. S.R.2d 8.7-8.8. The Board also found that the waivers did not nullify the intent and purpose of the Comprehensive Plan, the Land Use Code, or the Subdivision Ordinance because those documents encourage protecting the natural environment. S.R.2d 8.8, Finding #41.

Furthermore, the court finds that it was not inappropriate for the Planning Board to have heard this evidence at the Sketch Plan Review on September 15, 2009. Although section 13.18 of the Ordinance requires a request for a waiver to be made in writing, nothing requires that the evidence supporting the waiver only be heard after the written request is made. At the September 15, 2009 Planning Board meeting the applicant notified the Planning Board that a waiver request would be made, presented evidence to support the request, and answered questions. The applicant made its formal written request by letter on November 10, 2009. Subsequent to that written request the Planning Board held four meetings on this subdivision application. These meetings presented adequate opportunity for opponents to the waivers to present evidence. The Planning Board agreed to the waivers in principal at the September 15, 2009 meeting but did not make a written grant until the April 21, 2010 Notice of Planning Board Decision.

Ordinance Waiver Requirements

The Plaintiffs also allege that the road standard waivers that the Planning Board granted to the applicant Town of West Bath violate the Subdivision Ordinance, article 13 of the Bath, Maine Land Use Code. Section 13.18(A), entitled "Waivers Authorized," provides

7

two standards by which an applicant may deviate from the requirements of the subdivision ordinance. First, "if the applicant is able to demonstrate that the intent and purpose of a submission requirement, performance standard, or design and construction requirement is met by an equivalent method, that equivalent method may be approved." R. 23.36. Alternatively,

> [t]he Board may waive a standard or requirement if the applicant requests the waiver in writing, and the Board finds that, due to special circumstances or inappropriateness, meeting the standard or requirement is not required in the best interest of the public health, safety, and general welfare. Waivers must be granted only in writing with written findings of facts and conclusions, and may be subject to conditions. Waivers must not nullify the intent and purpose of the Comprehensive Plan, the Land Use Code, or this Ordinance.

*Id.* Section 3.14(A), entitled "Applicability of Design and Construction Requirements," also makes these two alternative avenues (equivalent method or waiver) available for an applicant to comply with requirements of section 13.14.

The Plaintiffs argue that, under both sections 13.18 and 13.14, the applicant must prove (1) that special circumstances or inappropriateness exist and meeting the standard is not required in the best interest of the public health, safety, and general welfare and (2) that the applicant has shown that the intent and purpose of the standard is met by an equivalent method. Pls. Br. 5. It is unclear whether section 13.14(A) or 13.18(A) controls this situation.[5] However, it is clear that both sections present alternative avenues of relief from the requirements of the Ordinance rather than conjunctive requirements. If the Board grants a waiver (instead of accepting an equivalent method), the applicant does not have to prove that the intent and purpose of the requirement be met.

---

[5] Slight differences exist in the language of these two sections. Although section 13.18 appears to be a general section applicable to all of Article 13, section 13.14(A) may be an attempt to differentiate the standard for design and construction requirements. The court does not decide which section controls because the standard is satisfied under either section.

8

The Board's decision to allow deviation from the road design standards was based on "special circumstances or inappropriateness" rather than an "equivalent method." *See* S.R.2d 8.7, 8.16. The Board was not required to find that the intent and purpose of the road standard requirements were met by an equivalent method. Therefore, the waivers were not granted in violation of the Ordinance and do not constitute an error of law.

IT IS HEREBY ORDERED:

The Defendant's Third Amended Notice of Planning Board Decision is affirmed and Plaintiffs' Rule 80B appeal is denied. Judgment shall be entered for the Defendant.

With regard to costs under M.R. Civ. P. 55, each side has prevailed at different phases of this case. The court awards the Plaintiffs their allowable costs incurred prior to the first and second remands, and awards Defendant its allowable costs incurred after the case was remanded for the second time. Each side may submit a bill of costs, and costs allowed will be netted in favor of one side or the other.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated 28 September 2011

A. M. Horton
Justice, Superior Court

9