David M. GLASSER

v.

TOWN OF NORTHPORT, et al.

Supreme Judicial Court of Maine.

Argued March 18, 1991.
Decided April 22, 1991.

David M. Glasser (orally), Lincolnville, for plaintiff.

E. Stephen Murray (orally), Murray, Plumb & Murray, Portland, for West Bay.

Terry W. Calderwood (orally), Eaton, Peabody, Bradford & Veague, Camden, for Town of Northport.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, CLIFFORD,
COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

The Planning Board of defendant Town of Northport approved a subdivision application submitted by defendant West Bay Associates (West Bay). Plaintiff David M. Glasser appeals the affirmance in the Superior Court (Waldo County, *Chandler, J.*) of the subdivision approval. Finding no error in the municipal action, we also affirm.

The West Bay project involves the subdivision of a large tract of land on Ducktrap Mountain in Northport. As the plan was finally approved, West Bay would convey between 50 and 65 acres on the north side of the mountain to the Nature Conservancy, and develop 17 house lots, each a minimum of 5 acres, on the remaining 122 acres on the south side. Glasser owns land abutting the southern, downhill boundary of the proposed development. In 1987 the developers informed the Northport Planning Board at a public meeting and the abutters

via mail that they were planning the subdivision. In January 1988 West Bay submitted a preliminary application to the Town. Over the next ten months at least eight public meetings of the Board were held at which the subdivision application was discussed and an extensive record was developed. The Planning Board approved the subdivision on October 18, 1988.

Plaintiff sought Superior Court review for the subdivision approval under M.R. Civ.P. 80B. Without consulting with defendants on the scope and content of the record, plaintiff after lengthy delays filed in court only a partial record and transcript and provided no copies to defendants. Defendants responded by filing a motion to dismiss because of plaintiff's failure to comply with the procedural rules. While the court (*Smith, J.*) denied the motion to dismiss, it did order plaintiff to complete the record and provide copies to both defendants, and it further ordered that plaintiff would not be allowed to file a reply brief or to be heard at oral argument. In the meantime, Spooner Realty Partnership had bought the Ducktrap Mountain property with the intent of taking over the proposed development and proceeding with West Bay's subdivision plan as approved. On October 18, 1989, the court (*Chandler, J.*) granted West Bay's motion to add Spooner as a party defendant and affirmed the Planning Board's approval of the subdivision application. The court remanded the case to the Northport Planning Board to consider Spooner's financial capacity. The Board again reaffirmed its approval of the application. The parties stipulated that there was nothing further for the Superior Court to review, and Glasser appealed to this court.

## I.

### *Sufficiency of the Planning Board's Findings*

■■■ The statute required the Planning Board, before approving the subdivision application, to make findings that the subdivision would meet the statutorily mandated criteria and would comply with the Town's subdivision ordinance. *See* 30 M.R.S.A. § 4956(2), (3) (Pamph.1988).[1] Glasser contends that the Board failed to make adequate findings on certain of those criteria and that therefore its approval of the subdivision application is a nullity. There is no support in our decisions for any such draconian consequence of inadequate findings. At most, were we to find the record contained inadequate findings, we would remand the case to the Board and direct it to make further findings. *See Valente v. City of Westbrook*, 543 A.2d 1373, 1375 (Me.1988). In any event, we find no reason for a remand. The record as a whole does reveal what the Board found to be the pertinent facts.

■■■ In its written decision approving the subdivision plan, the Planning Board stated:

> Having considered the subdivision criteria of Title 30 M.R.S.A. Section 4956, and the criteria of the Northport Subdivision Ordinance, and based upon a finding that the application of West Bay Associates conforms with all such criteria upon the imposition of the conditions set forth below; it is hereby Ordered by unanimous vote of the Planning Board that the final approval of the subdivision of West Bay Associates be granted. . . .

That conclusory statement standing alone does not satisfy the statutory requirement. The requirement, however, can be satisfied even in the absence of detailed findings as long as "the decision is supportable on the basis of express or implicit findings revealed by the record as a whole." *Valente v. City of Westbrook*, 543 A.2d at 1375; *Cunningham v. Kittery Planning Board*, 400 A.2d 1070, 1079 (Me.1979). Because the record in the case at bar amply elucidates the administrative agency's reasons for its decision, the absence of specific written findings is not fatal to the Board's approval of the subdivision.

---

1. The legislature has since recodified 30 M.R.S.A. § 4956, and the comparable review procedures and criteria now appear at 30–A M.R.S.A. §§ 4403, 4404 (Pamph.1990).

## II.

### Sufficiency of the Evidence

Glasser also contends that there is insufficient evidence on the record to support the Planning Board's conclusions on three of the criteria that must be considered for a subdivision application. *See Mack v. Municipal Officers of Cape Elizabeth*, 463 A.2d 717, 719-20 (Me.1983). "That the record contains evidence inconsistent with the result or that inconsistent conclusions could be drawn from the evidence does not render the Board's findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the Board's conclusion." *Id.* at 720. Keeping that in mind, we turn now to the three criteria that Glasser contends were not supported by sufficient evidence.

■ The first of these is the statutory requirement that the soils and subsoils at the proposed development can handle sewage disposal and that the subdivision would not unduly burden the municipality's sewage facilities. *See* 30 M.R.S.A. § 4956(3)(A), (F), (G). Under the Town's subdivision standards, approval of the final plan as presented by West Bay also required written approval of the sewage plans by the Department of Human Services. With its preliminary application West Bay submitted soil test logs detailing the types of soils and subsoils at the site and the ability of each to support the planned sewage disposal system. In response to Glasser's specific concerns about potentially elevated nitrate-nitrogen discharge levels, West Bay commissioned a groundwater study to address specifically that issue. By that study the nitrate-nitrogen discharge levels would be acceptable if certain modifications were made to the proposed system. Relying on these reports before the Planning Board, a Department of Human Services engineer gave written approval of the planned sewage system, conditioning the approval on the adoption of the modifications suggested in the groundwater study. This evidence was ample for the Board reasonably to conclude that the planned sewage system met the statutory requirements.

■ The second criterion that plaintiff challenges as insufficiently supported by the evidence is the requirement that the subdivision not cause unreasonable erosion or reduction in the land's capacity to hold water. *See* 30 M.R.S.A. § 4956(3)(D). The Board had before it two hydrology reports on the West Bay subdivision location prepared by a registered engineer. These reports detail soil types, slopes, and drainage structures, provide calculations of surface water runoff rates, and project a minimal increase in surface water runoff resulting from the project. The engineer based his calculations on specifications in the final plan that limit the cleared areas to one acre per five acres of lot and the buildable areas to a 100-foot-diameter circle per lot. Glasser's contention that the reports were based on incorrect assumptions is unfounded. It was entirely reasonable for the Board to rely on those reports in concluding that the subdivision would meet the statutory requirements as to surface water drainage.

■ The final criterion that Glasser challenges as insufficiently supported by the evidence is the requirement that the subdivision not have "undue adverse effect on ... rare and irreplaceable natural areas." 30 M.R.S.A. § 4956(3)(I). Early in the application process the Department of Inland Fisheries and Wildlife (DIFW) wrote the Board to express concerns that the proposed subdivision would destroy a large deer wintering area. In turn, the Board instructed the developers to modify their plan better to accommodate the deer. Working with the DIFW, the developers revised the plan and submitted to the Board a copy of the letter they had sent to the DIFW finalizing these steps. An independent biologist also submitted a letter opining that the modifications took care of the problem. Contrary to Glasser's contention, the Board could reasonably conclude that the deer yard question had been satisfactorily addressed.

## III.

### Glasser's Due Process Rights

■ Glasser argues that the Planning Board denied him due process at a number

of stages in these proceedings. The record amply supports a conclusion that his due process rights were adequately protected throughout the permit approval process. As an abutter he was notified by mail of the developers' planned project several months before any application was submitted. He had a copy of the preliminary subdivision plan as early as January 1988. He gave the proposal to his own independent environmental expert, who in turn prepared a point-by-point report on the plan, noting several potential problems. Glasser then appeared at a town meeting with this report and presented his concerns. As the result of questions raised in that report, the developers obtained additional hydrology and drainage reports for the Board's consideration; the expert's concerns on the deer yard issue were also a factor in the Board's requiring the developers to work with the DIFW to insure that the plan provided adequate protection for the deer yard. Glasser was present at all but the last of the eight public meetings at which the subdivision was discussed, and he was present when the time and date of the eighth meeting was announced. At all seven meetings he attended, Glasser was an active participant, and on more than one occasion his suggestions were incorporated into the final subdivision plan.

 This history makes clear that Glasser's various allegations of due process violations are insubstantial. Contrary to his contention, Glasser was able to participate meaningfully throughout the permit approval process. His argument that the fact the Town's attorney was paid by the developers created an impermissible conflict of interest and necessarily prejudiced the attorney in favor of the developer is without merit. The financial arrangement was public, and Glasser offers no evidence in support of his contention that the arrangement caused the attorney to favor the developers in his dealings with the Town. Glasser's argument that the Board was

required to base its decision on sworn testimony is equally unfounded. Neither the statutes nor our decisions offer any basis for this contention.

## IV.

### The Superior Court Sanctions

 The Superior Court found that Glasser's failure to confer with the other parties to discuss the contents of the record, submission of only a partial record, and refusal to supply defendants with copies were sufficient bases to sanction him by denying him the chance to file a reply brief or to be heard at oral argument. M.R. Civ.P. 80B(e) makes the plaintiff responsible for the preparation and submission of the record and directs the parties to meet in advance to agree on the record to be submitted. Every designation of record must be served upon each of the parties. *See* M.R.Civ.P. 5(a). Glasser failed to comply with those rules. The sanction imposed by the court was essentially that specified by M.R.Civ.P. 80B(h) for a defendant's failure to comply with the procedural rules of Rule 80B. It was no abuse of discretion for the court to impose the sanction in the present circumstances. *See Lerman v. Inhabitants of Portland,* 406 A.2d 903, 904 (Me.1979). In any case, because we review the Planning Board's action directly, *see Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982), the restrictions on Glasser's participation before the Superior Court have not at all hampered his advocacy before us.

The entry is:

Judgment affirmed.

All concurring.