NATIVE VILLAGE OF EKLUTNA,
Appellant,

v.

The BOARD OF ADJUSTMENT FOR THE MUNICIPALITY OF ANCHORAGE, and National Bank of Alaska, Appellees.

No. S–8695.

Supreme Court of Alaska.

Feb. 4, 2000.

Sara E. Heideman, Hedland, Brennan, Heideman & Cooke, Anchorage, for appellant.

Dennis A. Wheeler, Assistant Municipal Attorney, Mary K. Hughes, Municipal Attorney, Anchorage, for appellee Municipality of Anchorage, Board of Adjustment.

Gregory L. Youngmun, DeLisio, Moran, Geraghty & Zobel, Anchorage, for appellee National Bank of Alaska.

Before MATTHEWS, Chief Justice, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. *INTRODUCTION*

This case concerns the issuance by the Planning and Zoning Commission of a conditional use permit for a granite mining operation to the National Bank of Alaska. The decision granting the permit is challenged by the Native Village of Eklutna. Because the

Commission failed to consider properly the potential historical significance of the area, we vacate the decision of the Board of Adjustment and remand for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

### A. Facts

National Bank of Alaska (Bank) owns 160 acres of land north of the Native Village of Eklutna (Eklutna). Since March 1995 this property has been zoned I–2 SL (heavy industrial, special limitations). The special limitations of the zoning included a requirement that a master plan for development of the site (including, inter alia, a traffic impact analysis and identification of critical habitat/wetland areas) be submitted to the Planning and Zoning Commission along with any application for a conditional use permit.

The Bank's property is located in the Chugiak–Eagle River Comprehensive Plan (the "Plan") area south of Knik Arm and north of the Glenn Highway and the village of Eklutna. The Plan, required by municipal ordinance, dictated that the Municipality develop and implement a long-range plan concerning the physical development of the Municipality. Under the Plan, the Bank property was classified for industrial use because of the existing quarry next to the property.[1] The southwestern and western boundaries of the property border a parcel owned by the Alaska Railroad Corporation, and the Alaska Railroad tracks separate the Bank property from the Eklutna village to the south. The Alaska Railroad has used its property as an industrial granite quarry site since the 1940s. The Bank property is accessible by a rail spur which runs past the face of the quarry.

The Bank proposes to conduct a granite mining operation in the southwest corner of the property, on the Bank-owned side of the same quarry that is presently operated by the Alaska Railroad. Over the next twenty to twenty-five years, the Bank intends to expand the operation northward to the northwest corner of the property. The Bank currently uses the opposite end of the property, in the northeast corner, as a private recreation area for picnics and social gatherings.

The southwesterly portion of the Bank's property encompasses one-half of the larger of two hills. Eklutna claims that these two hills possess great cultural significance as the objects for which the village is named, according to Dena'ina Athabascan tradition. Both sides agree that the Bank's proposed mining operation will destroy that portion of the larger hill located on the Bank's property.

### B. Proceedings

In July 1995 the Bank filed an application for a conditional use permit to conduct a granite mining operation on the southwesterly portion of the property. With the application, the Bank submitted a "Master Plan for Development of NBA's Eklutna Property."

The application and master plan were reviewed by a number of state and local agencies, most of which had no comment and a few of which suggested revisions or conditions. Ultimately, the planning staff of the Municipality of Anchorage Department of Community Planning and Development recommended that the Commission approve the master plan and conditional use permit, subject to some conditions.

The Planning and Zoning Commission held a public hearing on November 6, 1995. The Commission approved the master plan, but initially denied the conditional use permit. At its next meeting, in December 1995, the Commission voted to reconsider its denial of the permit as well as its approval of the master plan, and the matter was rescheduled for February 1996. Sometime between the November and December meetings, the Bank supplemented the permit application with an archeological report ("the Hart Crowser Report"), and then submitted wetlands, wildlife, and habitat studies between the December and February meetings. In January 1996 the Bank also prepared and submitted a traffic impact analysis. In February the planning staff presented another report to the Commission, again recommending that the Commission approve the master

---

1. See Anchorage Ordinance 94–169(aa).

plan and conditional use permit, with conditions. This report contained a section listing issues that the Bank had to resolve "[p]rior to the conditional use becoming effective," including an "archaeological survey [to] be submitted for review and approval by the State Historic Preservation Officer, if required."

On February 12 the Commission conducted another public hearing. At the conclusion of this meeting, the Commission approved the master site plan and approved the conditional use permit, subject to conditions of approval. These conditions of approval were identical to the conditions of approval listed in the report of the planning staff.

Eklutna appealed to the Anchorage Board of Adjustment, which affirmed the Commission's decision. The Board decided that the findings of the Commission were "supported by substantial evidence in the record," and made additional findings of fact in support of the Commission's decision.

Eklutna then appealed to the superior court, which affirmed the decision of the Board. The court held that there was substantial evidence to support the Board's determination that the conditional use would be compatible with existing and planned land uses in the surrounding neighborhood, as required by Anchorage Municipal Code (AMC) 21.50.020(C), and that the traffic impact analysis requirements of AMC 21.50.020(D) were met. The court also held that substantial evidence supported the Board's decision that the special limitations of Anchorage Ordinance (AO) 94–169(aa) were satisfied, including the identification of habitat and wetlands areas. Finally, the court found that substantial evidence supported the Board's conclusion that no cultural resources would be adversely affected by the permit activity, though the archeological report prepared by Hart Crowser on behalf of the Bank "constituted the minimal information necessary for the Board to make its determinations in compliance with the law."

The superior court refused to reach Eklutna's argument that an archeological survey of the site must be reviewed by the State Historic Preservation Officer prior to the conditional use permit becoming effective, on the ground that Eklutna had waived the issue by failing to specifically include it in the statement of points on appeal.

Eklutna appeals to this court.

III. *STANDARD OF REVIEW*

*South Anchorage Concerned Coalition, Inc. v. Coffey*[2] establishes the standard of review applicable to the Board of Adjustment decision in the present case. "[J]udicial review of zoning board decisions is narrow and ... a presumption of validity is accorded those decisions."[3] This court will uphold the Board's decision as long as it is, "in the light of the whole record, ... supported by substantial evidence."[4] In a case that involves a zoning board's interpretation of zoning ordinances and planning documents, this court will give such interpretations "considerable deference."[5]

With regard to the superior court's decision, this court will "independently review the record because the superior court was acting as an intermediate appellate court with respect to the Commission's decision."[6]

IV. *DISCUSSION*

A. *Were the Findings of the Board of Adjustment That No Cultural Resources Would Be Affected by the Quarry Supported by Substantial Evidence?*

This is the most contested issue in the case. Pursuant to AMC 21.50.020(A), "[t]he authority hearing a conditional use application may approve the application only if it finds that the conditional use ... [f]urthers the goals and policies of the comprehensive development plan and conforms to the comprehensive development plan." The Municipality of Anchorage is required by AS

---

**2.** 862 P.2d 168 (Alaska 1993).

**3.** *Id.* at 173.

**4.** *Id.*

**5.** *Id.* at 173 n. 12.

**6.** *Id.* at 173.

29.40.030 to adopt such a comprehensive development plan and implement land use regulations in accordance with the plan. The Chugiak–Eagle River Comprehensive Plan is incorporated by reference into the Anchorage Comprehensive Plan.[7] The "Guidelines for Growth" within the Comprehensive Plan guide developers to consider historic and archaeological resources.[8] Specifically, the Development Plan sets a goal of preserving "historic and archeological sites determined to have local and/or State significance" and encourages "the preservation of historic and archeological structures on site."[9] Therefore, when evaluating a conditional use permit, the Commission must consider the archeological and historic significance of the site.

The Commission found, and the Board sustained a finding, that "*no* cultural resources will be adversely affected by the quarry ." (Emphasis added.) Eklutna argues that this finding was unsupported by substantial evidence.

The only evidence produced by the Bank to support this conclusion was a five-page "Cultural Resources Services Letter Report" written by Hart Crowser. According to the report, Hart Crowser reviewed publicly available resources to acquire an understanding of known historic properties and events and performed a reconnaissance-level archaeological survey of the proposed quarry site. The report concludes that no significant effects to cultural resources would result from the proposed undertaking and recommends no further reconnaissance surveys. Nonetheless, the Hart Crowser Report closes with a general warning "that quarry workers be made aware of the historic setting within which the work is being performed and cautioned regarding the need to minimize potential adverse effects should archaeological or historic materials be encountered in a subsurface context."

Eklutna argues that the study is inadequate, as it "consisted merely of a [one-day] walk of the property, with limited subsurface shoveling" on a day when the ground was frozen. During the public hearings before the Commission, at least two witnesses testified as to why the Hart Crowser Report is inconclusive. Anna Lowrey, an Eklutna Village resident, pointed out that the shovel testing conducted during the archeological survey was limited and indicated that prehistoric Indian habitation sites likely exist in the granite hills. Gary Harrison, chairman of Chickaloon Village and a traditional Athabascan chief, explained that the site is traditional native hunting land.

Ellen Bielawski, Ph.D., offered the most comprehensive critique of the Hart Crowser study.[10] Dr. Bielawski underscored that local and indigenous knowledge was absent from the assessment and that the ground was frozen when the shovel testing took place. Bielawski further criticized Hart Crowser's method, including the paucity of literature reviewed in aid of the assessment.

■ Other evidence in the record shows that the area is culturally significant. In his testimony and documentary submissions, Lee Stephan, CEO and vice president of the Traditional Council of Eklutna, explained that Eklutna is named for the granite hills in question. In the native Athabascan language, the village's name refers to "two knobs and a river." Others confirmed this. Anna Lowrey found it "unthinkable that the hills that give ... Eklutna ... its name could be mined for granite." Nancy Yaw Davis, Ph.D., a National Bank of Alaska shareholder who conducted a study of Eklutna for her master's thesis, found it startling that "one of the hills that the community is named for may be quarried away." In her letter dated November 6, 1995, Dr. Davis writes, "If that happens, then Eklutna will have to be renamed; it will no longer be 'Place of plural objects', but only one. One hill quarried;

---

7. *See* AMC 21.05.030(C).

8. Chugiak–Eagle River Comprehensive Plan, AO 92–133 at 114–15 (1993).

9. *Id.* at 114.

10. Although Bielawski's comment was not part of the Commission record, both the Board of Adjustment and the superior court considered the comment. Accordingly, we include the Bielawski comment as part of our review of the record.

one hill standing." Furthermore, village residents Lois Munson and Michael and Anna Curtis and representatives of the Saint Nicholas Russian–Orthodox Church expressed concern that the proposed quarry would damage existing historic, cultural, and religious resources.

In light of this evidence, we believe that the Board's finding that "no cultural resources will be adversely affected" was unsupported by substantial evidence in light of the whole record. The evidence unquestionably established that *some* cultural resources will be adversely affected by the proposed quarry. The historical value of the twin hills that gave Eklutna its name is a cultural factor that should have been considered.

On remand, the Commission should determine the extent to which these resources would be adversely affected and, with these adverse effects in mind, whether the conditional use permit otherwise "[f]urthers the goals and policies of the comprehensive development plan and conforms to the comprehensive development plan." [11] In support of its findings, the Board identified the goal and policy of developing "an industrial use to support the economic base of the Anchorage area." However, neither the Board nor the Commission considered the goal and policy outlined by the Comprehensive Plan for preserving historic and archaeological resources. Accordingly, the Commission should first determine the extent to which cultural resources would be adversely affected by the proposed quarry. Then, the Commission should weigh the goal of preserving historic and archeological resources against the goal of supporting an economic base for the community. If the adverse effects to archaeological and historic resources outweigh the economic advantage gained by the proposed conditional use, the Commission should deny the conditional use permit. If the economic

gains outweigh the cultural losses, then the Board should grant the permit.

B.  *Did the Superior Court Err in Refusing to Supplement the Record on Appeal?*

On November 17, 1997, during the appeal to the superior court, Eklutna moved to supplement the record by adding three additional documents: the Bielawski "comment" (a response to the Hart Crowser cultural study); the Lamoreaux "pilot study" (regarding the wildlife and habitat study prepared by the Bank); and the Fall Report, an ethnographic study of the region prepared in September 1997 under the sponsorship of the Railroad.[12] The first two documents had been considered by the Board, though the Board had indicated that it would not normally address materials "not raised in the record below." The third (the Fall Report) did not exist at the time of the proceedings before the Commission or the Board.

The superior court granted Eklutna's motion as to the first two documents, but denied it as to the third. Eklutna contends that the superior court had authority to supplement the record under Alaska Appellate Rule 609,[13] and that not to have done so was error because the report contained "critical information."

Because we remand this case for lack of substantial evidence, we need not decide whether the superior court should have considered the Fall Report. Under the Anchorage Municipal Code, "Appeals alleging new evidence or changed circumstances shall ... be remanded forthwith by the municipal clerk to the lower administrative body, which shall determine whether to rehear the matter." [14] As noted above, the Commission will rehear this matter in order to weigh the goals of economic gain versus cultural preservation. On rehearing, the Commission

**11.** AMC 21.50.020(A).

**12.** The Fall Report is based on interviews with residents of Eklutna, and contains a great deal of information about the *significance of the two* hills as the source of Eklutna's name.

**13.** Appellate Rule 609 states that the superior court "may in its discretion grant a trial de novo in whole or in part." *See also Southwest Marine,*

*Inc. v. State, Dep't of Transp. and Pub. Facilities,* 941 P.2d 166, 172 (Alaska 1997) ("When the superior court acts as an appellate court, it may decide to supplement the record or order a *de novo* examination of the record at its discretion.").

**14.** AMC 21.30.040.

should, in the exercise of its discretion under this provision, decide whether to admit the Fall Report and any other newly offered evidence.

### C. Did the Board of Adjustment Believe that an Archeological Survey, Reviewed by the State Historic Preservation Officer, was Required Before the Permit Would Become Effective?

Under AMC 21.50.070(C), the Commission "shall attach such conditions to the approval of a natural resource extraction conditional use as it finds are necessary." On recommendation by the planning staff, the Commission attached several conditions to its approval of the Bank's conditional use permit. Among these was a condition that an "archaeological survey be submitted for review and approval by the State Historic Preservation Officer, if required." [15] Affirming the Commission's decision, the Board slightly modified this condition, saying: "prior to the conditional use being effective, ... there be [sic] an archaeological survey of the site, reviewed by the State Historic Preservation Officer." [16]

Eklutna claims that this language means that the Bank cannot get a permit until such a survey is reviewed and approved by the Preservation Officer.

■ The Bank, citing Appellate Rule 204(e), counters that Eklutna waived this argument by failing to explicitly raise it in the points on appeal. · However, Eklutna is correct when it argues that "[t]he relevant question is not whether an issue is stated verbatim in a statement of points on appeal, but rather whether the court and the opposing party are fully informed as to the matter at issue." Appellate Rule 204(e) does not necessarily preclude this court from hearing points not raised in the points on appeal. Rather, Appellate Rule 204(e) provides, "The appellate court will consider only points included in the statement [of points], and points that the court can address effectively without reviewing untranscribed portions of the electronic record." (Emphasis added.) In the present case, all relevant portions of the electronic record have been transcribed. Furthermore, Eklutna raised this issue before the superior court, and the issue was fully briefed before this court. [17] The appellees and this court are sufficiently informed and Appellate Rule 204(e) does not preclude review.

Alternatively, the Bank claims that it submitted such a survey to the Preservation Officer, making Eklutna's claim moot. But no evidence has been presented that such a survey has been submitted. In any case, we need not decide this issue because, as the Bank argues, this particular challenge is untimely. Eklutna's suit challenges the authority of the Board to make the decision, not whether the Bank complied with the decision. If, after remand, a permit is issued with this condition and if then the Bank fails to comply with the condition, Eklutna may seek redress. But currently non-compliance with the condition is not before us.

### D. Were the Board's Other Findings Supported by Substantial Evidence?

■ Eklutna challenges the Board's decision that the Bank's proposed conditional use complies with AMC 21.50.020(C) [18] and (D). [19]

---

**15.** The condition imposed by the Commission apparently only required that the archaeological survey be submitted if otherwise required by the Preservation Officer or any other administrative agency.

**16.** The parties do not challenge the appropriateness of this condition or the Board's authority to modify the condition imposed by the Commission.

**17.** Cf. Donnybrook Building Supply Co. v. Alaska Nat'l Bank of the North, 736 P.2d 1147, 1149 n. 6 (Alaska 1987) ("Although [the appellant] did not assert as error the trial court's decision on this issue in its Statement of Points on Appeal as required by Alaska R.App.P. 210(e), we choose to address it because the issue was raised before the trial court and was fully briefed by both parties.").

**18.** AMC 21.50.020(C) requires a proposed conditional use to be "compatible with existing and planned land uses in the surrounding neighborhood and with the intent of its use district."

**19.** AMC 21.50.020(D) requires that the proposed use "not have a permanent negative impact on the items listed in this subsection substantially greater than that anticipated from permitted development."

Eklutna contends that a rock quarry, "with its accompanying blasting, dust, truck traffic and aesthetic result" is fundamentally incompatible with residential neighborhoods. The Board, however, made specific findings of fact addressing this issue and these findings are supported by substantial evidence.[20]

■ Eklutna also challenges the sufficiency of the habitat and wetlands studies and of the traffic impact analysis submitted to the Commission by the Bank. These studies were required by the special limitations imposed by AO 94–169(aa). Substantial evidence supports the findings of the Commission and the Board that the Bank satisfied these requirements.[21]

## V. CONCLUSION

Because the Board's decision regarding the cultural resources affected by the permit was not supported by substantial evidence, we VACATE the Board's decision and REMAND this case for further consideration. On remand, the Commission has discretion to consider the Fall Report and any other evidence that has come to light since the prior proceedings.

EASTAUGH, Justice, not participating.

---

**20.** The Board found that the negative impact of the proposed conditional use would not necessarily extend beyond the property line or exceed other permissible heavy industrial uses and that the special limitations on quarry activity imposed by the Commission "tip the balance in favor of finding that this use will be compatible with the remainder of the I–2 zoned land."

**21.** To support its findings regarding the habitat and wetlands study, the Commission relied on the Resource Atlas, maps, and the Bank's summary of the material, in addition to analysis provided by the planning staff. Traffic impact was discussed at the committee hearings and several agencies reviewed and revised the suggested traffic plan.