NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ANTHONY ZENK and RUTH BAUMGARTNER, )<br><br>Appellants, )<br><br>v. )<br><br>CITY & BOROUGH OF JUNEAU, DAVID LENDRUM, ELIZABETH MIYASATO, G. OLE OLSON, and DAVID WILSON, )<br><br>Appellees. ) | Supreme Court No. S-16118<br><br>Superior Court No. 1JU-14-00957 CI<br><br>MEMORANDUM OPINION AND JUDGMENT*<br><br>No. 1639 – June 28, 2017 |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Anthony Zenk and Ruth Baumgartner, pro se, Juneau, Appellants. Robert H. Palmer III, Assistant Municipal Attorney, City & Borough of Juneau Law Department, Juneau, for Appellee City & Borough of Juneau. No appearance by Appellees David Lendrum, Elizabeth Miyasato, G. Ole Olson, and David Wilson.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

---

\*       Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

Homeowners in a residential subdivision sought a conditional use permit to relocate their existing greenhouse and landscaping business to their property. They then initiated the process to lease an adjacent municipally owned property and later amended the use permit application to include the municipal property. Neighbors opposed the permit, arguing that the business would negatively impact home values, unduly increase traffic, expose them to increased runoff, and potentially decrease water pressure to their homes. The borough planning commission held a hearing on the use permit without considering the lease application and issued a conditional use permit, subject to a list of conditions, for both lots. The neighbors appealed first to the borough assembly, which affirmed the decision to issue the permit, and then to the superior court, which affirmed the borough's decision. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Anthony Zenk and Ruth Baumgartner (Zenk[1]) own residential property, Lot 1 of Bonnie Subdivision, in Juneau. Their property has two houses, both accessed by a driveway shared with the other two Bonnie Subdivision lots. Margaret Tharp and David Lendrum (Lendrum[2]) own Lot 2, which has one house on it. The City and Borough of Juneau owns Lot 3, which is vacant. The shared driveway crosses Lots 2 and 3. Lot 1 fronts Mendenhall Loop Road, but, according to the City, the subdivision plat restricts Lot 1's road access to the shared driveway. Lot 1 is downslope from Lot 2, and there is apparent agreement that the shared driveway has a steep grade of more

---

[1] We refer to both Zenk and Baumgartner as "Zenk" because Zenk is listed as the author of the briefs filed in this court and participated at oral argument before us.

[2] We refer to both Tharp and Lendrum as "Lendrum" because Lendrum participated in the administrative appeal and testified at the public hearing on the permit.

than ten percent at the top. The three subdivision lots share both city water and sewer lines.

Lendrum has owned and operated Landscape Alaska — providing landscaping services and selling plants — for many years in Juneau; he began looking for a place to relocate the business after the land where it had been operating was sold. Lendrum bought the Bonnie Subdivision property with the intent of shifting some business to that site. The property's zoning allows a commercial greenhouse with retail sales if the City issues a conditional use permit.[3]

In July 2013 Lendrum applied for a conditional use permit for a retail greenhouse as well as a residence on Lot 2. Lendrum also applied for a development permit. Drawings in the record show the conditional use permit application was related mainly or only to Lot 2, although an accompanying narrative expressed a desire to lease a portion of the City's Lot 3. On August 9 the City gave notice scheduling an August 15 neighborhood meeting about the proposed commercial greenhouse and indicating the Planning Commission would review the proposal at its August 27 meeting. Eighteen neighbors signed a petition opposing the conditional use permit, raising concerns about traffic, increased noise, and potential "harmful runoff from pesticides and fertilizers." According to a staff memorandum to the Planning Commission, 16 community members, in addition to the applicants and City staff, attended the scheduled neighborhood meeting. At the August 27 meeting the City rescheduled consideration of the application to a later date because Lendrum needed to supply additional information.

---

[3]    Operating a commercial greenhouse with retail sales is a permissible use in all areas of Juneau except the waterfront districts, although most retail sales require obtaining a conditional use permit like the one at issue here. City and Borough of Juneau Code (CBJ) 49.25.250, (2012); CBJ 49.25.300 & table (2015).

In August 2013 Lendrum expanded the commercial greenhouse proposal to include leasing the City's adjacent Lot 3 and putting one greenhouse, additional parking, and some nursery stock on it.[4] He filed a different type of application for the proposed lease, but that application referenced the conditional use permit at issue in this appeal. A development permit application form, signed by a City employee as the applicant, was filed with the lease application.[5] In October 2013 Lendrum supplemented the conditional use permit application file with more detailed drawings and a longer narrative summary about developing both Lots 2 and 3.

As part of the conditional use permit application Lendrum obtained a permit from the Alaska Department of Transportation (DOT) related to the Mendenhall Loop Road driveway entrance; the entrance required some modification to allow an adequate turning radius. The permit indicated that the maximum number of vehicles "in any [one] hour" was ten; this was Lendrum's estimate, not a limit set by DOT.

Neighbors expressed opposition to the commercial greenhouse operation on Lots 2 and 3 in writing. Concerns focused on: (1) increased traffic, particularly the safety of using the shared driveway to access a business; (2) aesthetic values, such as views and buffering; and (3) issues related to water use and runoff drainage. Only

---

[4]    He began the lease process earlier, having Lot 3 appraised in July. With some exceptions, CBJ 53.20.040 (1971) requires land leased from CBJ to be appraised before the beginning of a lease term.

[5]    The proposal for leasing CBJ's Lot 3 was a separate proceeding with a different file number, although the notice for the rescheduled hearing at which the conditional use permit was eventually approved listed the lease file number as well. The Planning Commission took the lease proposal off the agenda because it was not yet ready for review. The only material in the record related to the lease file is a staff memorandum attachment that was later adopted by the Planning Commission.

Zenk's property shares water access and a driveway with the Lendrum and City properties.

In response to public comments the water utility suggested Lendrum have an engineer evaluate the water supply, noting that answers to the concerns raised in the comments depended on the plumbing code. A mechanical engineer gave the opinion that Lendrum's estimated water use for the greenhouses would not cause Zenk water pressure problems. The engineer also noted the existence of a capped water line to supply the City's Lot 3 if the lease were approved.

A City staff memorandum report recommended approval of both the conditional use permit and a lease for the City's Lot 3. The report suggested addressing some of the neighbors' concerns by limiting retail sales hours and requiring a grading and draining permit. The report found that the proposed greenhouse was consistent with the 2008 Juneau Comprehensive Plan "by providing opportunities for employment and by developing a diverse economy." The report also found that the proposed conditional use permit would not "materially endanger public health and safety" and would "maintain values and . . . not be out of harmony with the neighboring area." The report recommended approval of both the conditional use permit, subject to eight conditions, and the "[p]roject review" associated with the proposed lease of Lot 3, subject to a commercial use agreement between the City and Lendrum "prior to issuance of a building permit." The report indicated that the commercial use agreement would establish "[t]he maximum number of vehicles per hour" and set out a process for modifying the commercial use agreement.

The Planning Commission held a public hearing on the conditional use permit application in February 2014. The notice indicated the hearing was about both the conditional use permit and lease applications, but the Planning Commission took the lease off the agenda and did not hear testimony about it because the City Assembly had

not yet authorized lease negotiations.[6] The Planning Commission nonetheless considered the conditional use permit application for both lots.

At the hearing the City first outlined the staff report recommending approval. Lendrum then made a presentation about the business, its history in Juneau, his qualifications, and the proposed use of the lots; he also discussed some of the neighbors' concerns. The engineer who assessed the water supply testified that Lendrum's proposed use should not cause water pressure problems at Zenk's property. Public comments both supported and opposed the conditional use permit. Public comments were limited to three minutes each to allow everyone an opportunity to speak. Following the public testimony Lendrum was allowed to (and did) offer rebuttal comments. Planning Commission members also commented and asked questions. City staff recommended issuing the permit with easily measurable conditions allowing them to clearly evaluate possible violations.

After the discussion the Planning Commission approved the conditional use permit — listing nine conditions — in a 5-1 vote. The decision notice "adopted the analysis and findings" of the staff memorandum. The notice also stated, "Prior to starting any project, it is the applicant's responsibility to obtain a Lease and City Review Permit approval and any required building permits."

Five neighbors appealed the Planning Commission's decision to the City Assembly. Lendrum intervened in the appeal. After hearing arguments at an August 2014 meeting the City Assembly denied the appeal, deciding that the Planning Commission: (1) relied on substantial evidence for its decision; (2) had made adequate findings; and (3) "properly adhered to its rules of procedure with respect to hearing public testimony."

---

[6]     CBJ 53.09.260 (2013) sets out the process for negotiated leases.

Four neighbors appealed the City Assembly's decision to the superior court. The court considered arguments about multiple ordinance or regulation violations, due process, privacy and possible nuisance, the City having "a 'significant financial interest' in the approval of this conditional use permit," spot zoning, and a trial de novo request. On the record without a trial de novo the superior court affirmed the City Assembly's decision affirming the Planning Commission's decision.

Zenk — self-represented — appeals.

## III.   STANDARD OF REVIEW

When the superior court acts as an intermediate court of appeal in a zoning matter, we independently review the record.[7]   "[J]udicial review of zoning board decisions is narrow and . . . a presumption of validity is accorded those decisions."[8]  We "will uphold the [b]oard's decision as long as it is, 'in the light of the whole record, . . . supported by substantial evidence.' "[9]  We review questions of law such as questions of due process using our independent judgment.[10]  "In a case that involves a zoning board's interpretation of zoning ordinances and planning documents, [we] will give such interpretations 'considerable deference.' "[11]

---

[7]     *Native Vill. of Eklutna v. Bd. of Adjustment for Municipality of Anchorage*, 995 P.2d 641, 643 (Alaska 2000) (quoting *S. Anchorage Concerned Coal., Inc. v. Coffey*, 862 P.2d 168, 173 (Alaska 1993)).

[8]     *Id.* (second alteration in original) (quoting *Coffey*, 862 P.2d at 173).

[9]     *Id.* (alteration in original) (quoting *Coffey*, 862 P.2d at 173).

[10]     *Griswold v. City of Homer*, 252 P.3d 1020, 1025 (Alaska 2011) (quoting *May v. State, Commercial Fisheries Entry Comm'n*, 168 P.3d 873, 879 (Alaska 2007)).

[11]     *Native Vill. of Eklutna*, 995 P.2d at 643 (quoting *Coffey*, 862 P.2d at 173 n.12).

## IV. DISCUSSION

### A. The Superior Court Correctly Concluded That The Conditional Use Permit Did Not Constitute Spot Zoning.

Zenk argues that the City engaged in spot zoning by permitting Lendrum to operate a commercial business in a residential area.[12] The City responds that under our precedent a conditional use permit issued by the Planning Commission acting in a quasi-judicial capacity can never be spot zoning. The City is correct.

Zenk relies on *Griswold v. City of Homer*, in which we first considered spot zoning and adopted a three-part test to evaluate whether an ordinance constitutes spot zoning.[13] Zenk contends that each of the three parts of the spot zoning test are met in this case. The City responds that under *Cabana v. Kenai Peninsula Borough*[14] a litigant cannot challenge spot zoning through an administrative appeal but must instead bring an original action in the superior court. Because we have defined spot zoning as "an arbitrary exercise of *legislative* power"[15] and because the City did not act in a legislative capacity here, issuing the conditional use permit cannot be spot zoning.

---

[12] "[S]pot zoning is 'the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area . . . .' " *Griswold v. City of Homer*, 925 P.2d 1015, 1020 (Alaska 1996) (quoting 1 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING 3D § 5.12, at 359 (1986)).

[13] *Id.* at 1020 (adopting three evaluation factors: "(1) the consistency of the amendment with the comprehensive plan; (2) the benefits and detriments of the amendment to the owners . . .; and (3) the size of the area 'rezoned.' " (citing 3 EDWARD H. ZIEGLER JR., RATHKOPH'S THE LAW OF ZONING AND PLANNING § 28.01, at 28-3 (4th ed. 1995))).

[14] 21 P.3d 833 (Alaska 2001).

[15] *Griswold*, 925 P.2d at 1020 n.6 (emphasis added).

In *Cabana* a Homer resident challenged a Kenai Peninsula Borough ordinance reclassifying Homer land to light industrial use so that it could be exchanged for privately held land in Anchor Point.[16] Distinguishing our precedent from that of other state courts, we chose "to treat small-scale rezonings [i.e. spot zonings] as legislative decisions"[17] rather than quasi-judicial ones. In contrast "an entity which normally acts as a legislative body" is acting in a quasi-judicial capacity when it "applies general policy to particular persons in their private capacities."[18] So in this case, because the Planning Commission and then the City Assembly were applying general policy to particular persons in their private capacities, their actions were quasi-judicial rather than legislative; thus, this is not a case of spot zoning.

In *Cabana* we also held that a decision of a legislative body, such as the Assembly, "is subject to review by appeal [rather than direct action] *only* where the decision is a quasi-judicial one."[19] When considering conditional use permit appeals we have examined the application of permitting ordinances to the facts of the case, discussing whether substantial evidence supported the decision.[20] Spot zoning, as a legislative act, requires an entirely different type of procedural challenge and legal

---

[16] 21 P.3d at 834-35.

[17] *Id.* at 836 (first citing *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 249 (Alaska 2000); then citing *Griswold*, 925 P.2d at 1019 n.3).

[18] *Id.* at 835-36 (second alteration in original) (quoting *Kollodge v. State*, 757 P.2d 1028, 1033 (Alaska 1988)).

[19] *Id.* (emphasis added) (citing 4 KENNETH H. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 27.06 (4th ed. 1997)).

[20] *E.g.*, *Native Vill. of Eklutna v. Bd. of Adjustment for the Municipality of Anchorage*, 995 P.2d 641, 643-44 (Alaska 2000); *S. Anchorage Concerned Coal. v. Coffey*, 863 P.2d 168, 175-76 (Alaska 1993).

analysis.[21] If granting the conditional use permit were spot zoning, Zenk would have been required to challenge it in an original action in the superior court.[22] He did not, choosing instead to file an administrative appeal and argue about substantial evidence.

Perhaps more problematic for Zenk's contention that the conditional use permit amounted to spot zoning is the list of permissible uses set out in City ordinances. As the City points out, operating a commercial greenhouse with retail sales is a permissible use in nearly all Juneau zoning districts, although most retail sales require obtaining a permit like the one at issue here.[23] Although Zenk correctly observes that our precedent shows that simply because a use is allowed under a zoning ordinance does not mean that the use must be permitted,[24] that statement was made in the context of a conditional use permit appeal — not in the context of a spot zoning challenge — and is thus irrelevant to the spot zoning question.[25] The superior court correctly concluded that this case does not involve spot zoning.

---

[21]    *Griswold v. City of Homer*, 925 P.2d 1015, 1021-25 (Alaska 1996) (discussing spot zoning test factors and concluding ordinance was not spot zoning).

[22]    *See Cabana*, 21 P.3d at 836 & n.12 (affirming dismissal of administrative appeal and noting appellants could "obtain review" of decision through original action).

[23]    CBJ 49.25.250, (2012); CBJ 49.25.300 & table (2015).

[24]    *See Coffey*, 862 P.2d at 175-76 ("Simply because 'natural resource extraction' is permitted as a conditional use in R-2A areas doesn't mean that large-scale commercial mining must be permitted anywhere in the area so long as the mine operator takes every reasonable precaution to conduct the operation carefully." (citing *Byrum v. Bd. of Supervisors*, 225 S.E.2d 369, 373 (Va. 1976))).

[25]    *Id.* at 171-72 (setting out procedural history).

**B.** **The Planning Commission's Decision Was Supported By Substantial Evidence And Permissible Interpretations Of Ordinances.**

Zenk contends that the Planning Commission did not comply with all applicable ordinances and that its findings were not all supported by the evidence. The City responds that the Planning Commission complied with the law and that its findings are supported by substantial evidence. The City contends that Zenk's underlying argument has not really changed and that Zenk is effectively asking us to reassess the evidence to reach a different decision than did the Planning Commission.

Our review of zoning board decisions is deferential; we use the reasonable basis standard of review for most legal issues related to zoning ordinances[26] and the substantial evidence standard for factual issues.[27] We may apply our independent judgment to zoning ordinance interpretations when an ordinance is procedural and interpretation "does not 'implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function.' "[28] Because the questions presented here implicate agency expertise, we apply a deferential review.

Zenk first argues that the Planning Commission erred by scheduling a meeting and considering Lendrum's conditional use permit application because the application was not complete and City ordinances permit accepting only complete

---

[26] *Lazy Mountain Land Club v. Matanuska-Susitna Borough Bd. of Adjustment & Appeals*, 904 P.2d 373, 385 & n.68 (Alaska 1995).

[27] *Native Vill. of Eklutna v. Bd. of Adjustment for Municipality of Anchorage*, 995 P.2d 641, 643 (Alaska 2000) (quoting *Coffey*, 862 P.2d at 173).

[28] *S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment* (*S. Anchorage 2007*), 172 P.3d 768, 771 (Alaska 2007) (quoting *Alaska Pub. Emps. Ass'n v. State*, 831 P.2d 1245, 1247 (Alaska 1992)).

applications.[29]  Zenk illustrates this argument with specific items the conditional use permit application form lists as necessary for a "complete" application.  For example, Zenk argues "Lendrum's statement that he will plant 'native vegetation' along boundaries does not comply with" requirements that plans "be drawn to scale and clearly show existing and proposed vegetation with location, area, height, and type of plantings."[30]  Zenk similarly faults the Planning Commission for failing to "recognize[] that important physical features, such as drainage details, were missing from [the] project development plans," even though drainage and concerns about runoff were discussed in written testimony.  These illustrations directly relate to two neighborhood concerns, encroachment on privacy and potential for harmful runoff from the landscaping business.  Zenk also contends that the City did "not have discretion to schedule a [Planning Commission] hearing and then accept information to complete the application."

Zenk's arguments related to completeness and the City accepting the application without all of the information detailed on the form implicitly rely on a theory that because the City's application ordinance uses *must* — a mandatory term under another City ordinance[31] — strict, rather than substantial, compliance with the ordinance

---

[29]     CBJ 49.15.130 (1991) provides that permit applications must be complete and describes a complete application "contain[ing] all of the information necessary to determine if the development will comply with all of the requirements of the permit applied for."  The conditional use permit application instructions detail a list of information that should be included in plans as well as formatting expectations.

[30]     These requirements are part of the conditional use permit application form instructions and are not, as far as we have been able to determine, set out in an ordinance.

[31]     CBJ 49.15.130(a) ("All applications for permits must be complete, signed and accompanied by the applicable fee before the permit-issuing authority can accept the application."); CBJ 01.15.010 ("*Must* and *shall* are each mandatory." (emphasis in original)).

and the application form requirements is necessary. Zenk frames this as a plain meaning and mandatory language argument, but his reasoning assumes that an applicant must provide all the specific details listed on the conditional use permit application form.

City planning staff used substantial, not strict, compliance to evaluate the conditional use permit application's completeness: The staff memorandum adopted by the Planning Commission indicated that the application "substantially conforms to the requirements of CBJ Chapter 49.15."[32] Zenk argues that the statutory language is "clear" and "unambiguous" in requiring a complete application, but he does not explain why strict, rather than substantial, compliance with the statutory requirements is needed. We have permitted substantial rather than strict compliance in a variety of contexts,[33] and nothing here suggests that the City's use of substantial compliance to evaluate the conditional use permit application was impermissible. We give considerable deference

---

[32] Substantial compliance can be used with both procedural and substantive statutes, although the doctrine is somewhat different in the two contexts. *Compare Adamson v. Municipality of Anchorage*, 333 P.3d 5, 12-13 (Alaska 2014) (discussing application of substantial compliance doctrine to substantive requirements), *with S. Anchorage 2007*, 172 P.3d at 771-72 (discussing substantial compliance with procedural requirement).

[33] *See, e.g.*, *Adamson*, 333 P.3d at 13-15 (allowing substantial compliance with statutory and regulatory requirements for exposure to toxins because to do otherwise would be contrary to legislative intent); *Kim v. Alyeska Seafoods, Inc.*, 197 P.3d 193, 196 (Alaska 2008) (holding that procedural statute was directory, rather than mandatory, and strict compliance was unnecessary); *S. Anchorage 2007*, 172 P.3d at 771-72 (discussing substantial compliance with procedural requirement); *Grimm v. Wagoner*, 77 P.3d 423, 429 (Alaska 2003) (holding that substantial compliance was consistent with legislative purpose of disclosure law); *Jones v. Short*, 696 P.2d 665, 667 (Alaska 1985) (holding that substantial compliance was appropriate standard to evaluate whether contractor complied with contractor-registration statute).

to zoning board decisions,[34] and we are not persuaded the determination that Lendrum's application substantially complied with the requirements for completeness was erroneous either legally or factually.

As a legal matter the conditional use permit application provided sufficient detail for neighbors to comment, both in writing and orally at the meeting on the permit, and for Planning Commission members to question staff and Lendrum about the proposed land use. The application information thus fulfilled its purpose of giving neighbors and the Planning Commission adequate information about the proposed use for neighbors to make their concerns known and the Planning Commission to address them.[35] The permit itself imposed conditions addressing neighbors' concerns, including use of "Best Management Practices to protect the adjacent properties," a prohibition on water quality impairment, a limitation on retail hours, and improvements to the shared driveway.

As a factual matter the July narrative and plan, dealing only with Lot 2, showed display gardens on the property boundary and discussed drainage. The more detailed drawings and narrative amending the application to include Lot 3, filed after neighbors had voiced concerns, likewise showed gardens and native vegetation along boundaries, discussed runoff and drainage, and indicated that plants would screen

---

[34] *See Native Vill. of Eklutna v. Bd. of Adjustment for Municipality of Anchorage*, 995 P.2d 641, 643 (Alaska 2000) (setting out established standards of review for zoning board decisions, including "a presumption of validity" for the decisions and "considerable deference" to "a zoning board's interpretation of zoning ordinances and planning documents" (quoting *S. Anchorage Concerned Coal., Inc. v. Coffey*, 862 P.2d 168, 173 & n.12 (Alaska 1993))).

[35] *Cf. Jones*, 696 P.2d at 667 n.10 (noting in context of contractor-registration statute that "substantial compliance involves conduct which falls short of strict compliance with the statutory registration requirements, but which affords the public the same protection that strict compliance would offer").

neighbors' view of the property. This constitutes substantial evidence to support a determination that the application substantially conformed to the applicable requirements for completeness.

Zenk argues separately that the conditional use permit application should not have been accepted because it was not signed by anyone who owned or leased the City's Lot 3, even though: (1) the October narrative and diagram included development of Lot 3; (2) notice of the permit application public hearing included Lot 3 (and listed the City as an owner); and (3) the conditional use permit listed the City's Lot 3 as part of the property's legal description. The City responds that the signature of Greg Chaney, a City employee, on the development permit application form accompanying the request for a lease sufficiently fulfilled the signature requirement. The City adds that the process resolved "a chicken and egg type of conundrum" by having Chaney sign the form, after which the Planning Commission reviewed the conditional use permit application for both lots before considering the lease application for Lot 3 and "conditioning its approval on Lendrum obtaining a lease before operating on [City] Lot 3." The City also asserts that "[t]o allay any potential confusion, the Planning Commission explicitly imposed a condition that Lendrum could not use [City] Lot 3 until and unless the [City] Assembly authorizes the lease." The City indicated at oral argument before us that the conditional use permit allows Lendrum to use Lot 2 as a commercial greenhouse independently of a lease for Lot 3.

"Applications for permits will be accepted only from persons who have, or upon issuance of the permit, will have the legal authority to take action in accordance with the permit. All applications must be signed by the owners or lessees of the land to

be subject to the permit."[36]  Lendrum's July initial conditional use permit application clearly met this requirement because it covered only Lot 2, which Lendrum owned.  By the time the conditional use permit application was amended in October to include Lot 3 in the drawing and narrative, Chaney had signed a form in the lease file referencing the conditional use permit application "for project details."  In light of the "considerable deference" we give zoning boards when they interpret zoning ordinances and planning documents,[37] the Planning Commission could reasonably conclude that Chaney's signature was adequate for purposes of CBJ 49.15.120(a).

Zenk additionally argues that the applications did not have sufficient detail related to parking, lighting, and structures, contending that these issues "were briefly discussed in testimony."  But both the July and October plans show buildings and parking areas; the accompanying narratives indicate no lighting will be used because the business will not operate in winter and specializes in native plants that will not need additional greenhouse lighting.  Although it is true that the plans' parking areas do not show each space's exact dimensions, City ordinances have minimum dimensions for parking spaces, with additional specific requirements for van-accessible spaces.[38]  The number of parking spaces was, according to the staff memorandum, dependent on the area of the buildings and type of use; the memorandum calculated that at least eight parking spaces were needed for the business, one of which had to be van accessible, and two additional spaces were required for the residence.  The ordinance together with the memorandum and plans contained adequate information for the Planning Commission

---

[36]    CBJ 49.15.120(a) (1987).

[37]    *Native Vill. of Eklutna*, 995 P.2d at 643 (quoting *Coffey*, 862 P.2d at 173 n.12).

[38]    CBJ 49.40.210(b)(1), (3)(C)-(D) (2010).

to assess whether the proposed development of the lots met parking requirements. Again, we give considerable deference to a zoning board's interpretation of planning documents and ordinances.[39]

In sum the Planning Commission's acceptance of the conditional use permit application and issuance of the permit were supported by substantial evidence and permissible interpretations of the applicable zoning ordinances and documents. The City Assembly's decision affirming the Planning Commission's decision was not erroneous, and we affirm the superior court's decision affirming the City Assembly's decision.

**C.    The Superior Court Correctly Concluded That No Due Process Violation Occurred.**

Zenk argues that the conditional use permit approval process deprived him of procedural due process. In particular he notes that: (1) each member of the public was limited to three minutes of testimony, while Lendrum was given unlimited time; (2) those opposing the conditional use permit were not given an opportunity to rebut what they saw as "false and/or misleading statements made by the applicant"; and (3) "administrative efficiency took precedence over fair and just procedures." The City argues that Zenk does not have a property interest subject to due process or alternatively that the process used was adequate.

We do not need to consider the exact nature of the property interest at stake here because we agree with the City that the process used was more than sufficient to protect Zenk's interests. Zenk received notice of meetings about the conditional use permit, had the opportunity to (and did) submit written comments, testified in opposition to the conditional use permit at the public hearing, and was afforded the opportunity to appeal the decision first to the City Assembly, next to the superior court, and then to this

---

[39]    *See Native Vill. of Eklutna*, 995 P.2d at 643 (quoting *Coffey*, 862 P.2d at 173 n.12).

court. The record shows that the Planning Commission considered the neighbors' objections to the proposed use and imposed a number of conditions attempting to accommodate concerns.

In a similar case the Maine Supreme Court decided that a town had "adequately protected" the due process rights of a landowner whose property abutted a proposed 17-lot subdivision.[40] As in this case, the abutting landowner received notice of the land-use proposal and testified about the development at public meetings.[41] The landowner's concerns were addressed in some fashion by the town,[42] just as the City considered and attempted to address the neighbors' concerns when it imposed a list of conditions on Lendrum's development of the property. The Maine court observed that the landowner "was able to participate meaningfully throughout the permit approval process,"[43] and the same is true of Zenk.

Because Zenk had notice of the proposed land use and a meaningful opportunity to have his objections to that use considered, we see no due process violation in the specific procedures the City used in this case. We affirm the superior court's decision on this issue.

## V.    CONCLUSION

We AFFIRM the superior court's decision.

---

[40]    *Glasser v. Town of Northport*, 589 A.2d 1280, 1281, 1284 (Me. 1991).

[41]    *Id.* at 1284.

[42]    *Id.*

[43]    *Id.*